# COUNTY OF LAMOILLE,

#### AT THE

## AUGUST TERM, 1872.

PRESENT:

HON. ASAHEL PECK,
HON. HOYT H. WHEELER,
HON. HOMER E. ROYCE,       } ASSISTANT JUDGES.
HON. JONATHAN ROSS,

---

JOHN MASON AND VERGINA MASON *v.* ELIAKIM FULLER.

*Evidence. Expert.*

A woman who has had experience as nurse in childbirth, and, as such, been in attendance at premature births, may testify as an expert to her opinion as to whether the birth of a child was premature.

A witness testified that her husband died at a certain time, but that she was not with him when he died, nor present at his burial, and had no personal knowledge of his death, and only knew it from what his folks had told her and written her. *Held*, that the testimony was competent proof of the fact of death.

THIS was a complaint for bastardy, made by the said Vergina by the name of Vergina Vine, dated in January, 1871, wherein she represented herself as a single woman. The case was entered

at the May term, 1871, and continued to the December term following, at which term it was tried by jury upon the general issue, REDFIELD, J., presiding.

Before trial, John Mason, by leave of court, entered as a party plaintiff, as the husband of said Vergina. The said Vergina testified on cross-examination as follows:

" I was married to my first husband, Edward Vine, some fourteen years ago, and lived with him nine years in Bakersfield. He then went off, and I have not seen him since. He said he was going to St. Albans, when he left. My husband died two years ago last March. I was not with him at the time of his death, or present at his burial, and have no personal knowledge of his death; I only know it from his folks telling me and writing me. They wrote me three letters this winter, and his brother told my husband."

She also testified, that she was married to John Mason, her present husband, in the early part of October, 1871. There was no other testimony as to the death of her said former husband. After the testimony was closed, the defendant requested the court to order a verdict for the defendant, because there was no legal evidence of the death of her said husband, Edward Vine; but the court refused the request, and submitted the case to the jury.

The defendant requested the court to charge that the said Vergina having testified to a former marriage, it was necessary, in order to entitle her to a verdict, that she should show by legal proof, the death of her said husband, Edward Vine; that her testimony did not amount to legal proof, upon which the jury could find the fact of death.

But the court upon this point charged as follows:

" The question is made, whether the said Vergina, at the time of conception and birth of the child, was a single woman. The only testimony upon this point, is from her, and you have to say whether this fact is, in your minds, established. When a woman comes into court for trial, the law will not presume any marriage, —she will be presumed to be single, in the absence of any evidence tending to prove a marriage."

To the refusal to charge as requested, and to the charge as given, the defendant excepted.

Almira Adams was introduced as a witness on the part of the plaintiff, who testified that she was the nurse of said Vergina during her confinement; that she had acted as nurse in quite a number of cases, and had been in attendance where children were prematurely born. There was no testimony that she had read medicine, or had any knowledge upon the subject of medicine, except what she derived from her experience as nurse. The plaintiff asked her what her opinion was as to whether the birth of the said Vergina's child was natural or premature; to which the defendant objected, on the ground that she was not entitled to give evidence as an expert; but the objection was overruled; and the answer taken; to which the defendant excepted.

Verdict and judgment for the plaintiffs, and order of filiation.

*H. R. Start,* for the defendant.

The law does not presume a woman single when she comes into court to bastardize her issue; she must clearly prove, in making out her case, that she is single. There is error in the charge upon this point. Gen. Stat., 491, § 1, and 493, § 11; *Griffin* v. *Austin,* 8 Vt. 70. The remedy under the bastardy act is not given to all women, but to only a particular class of women, to wit, to single women; and the burden of proof was upon the complainant to show that she belonged to that class.

The evidence to prove the death of the former husband of the complainant, was hearsay. 1 Greenl. Ev. § 99; *Warner* v. *Mc-Gary,* 4 Vt. 507.

It was error for the court to allow Mrs. Adams to give her opinion as to whether the birth of the child was premature.

*McIntyre* and *Benton,* for the plaintiffs.

The testimony to prove the death of the former husband, comes within the qualification of the rule as to hearsay evidence, which allows the fact of death to be proved by hearsay or reputation. 4 Phil. Ev., Cowen & Hill's notes, 237 *et seq.*; *Webb* v. *Richardson,* 42 Vt. 465.

The admission of the opinion of the nurse as an expert, was proper. ———— v. *Harris,* 5 R. I. 243; *Fairchild et al.* v. *Bascomb et als.* 35 Vt. 398.

The opinion of the court was delivered by

WHEELER, J. I. The witness Almira Adams, by her experience and observation, appears to have acquired knowledge of the subjects about which she was testifying, that persons generally do not have. To the extent of this peculiar knowledge, she was a person of skill and science, and her opinion, founded upon it, was evidence competent to go to the jury. *Goodtitle* v. *Braham*, 4 T. R. 497 ; *Chaurand et al.* v. *Angerstein*, Peake, 44 ; 1 Phil. Ev. with Cowen & Hill's notes, 778.

II. So far as the defendant asked the court to charge that the plaintiff must show the death of her former husband, to entitle her to a verdict in her favor, the request appears to have been complied with. That part of the charge stated, in which the court told the jury that the law would not presume any marriage, but would presume a woman to be single, appears to have been stated with reference to a case where there was no evidence upon the subject of marriage one way or the other. Such a case would have been very different from this one ; and the remark appears to have been made as an illustration merely, and not as a guide to the jury. Whether sound or erroneous, the remark would not injure the defendant. The only question left, as to this part of the case, is whether the testimony of the plaintiff as to what her former husband's folks had told and written her about his death, was competent evidence of it. " Hearsay is good evidence to prove who is my grandfather, when he married, what children he had, &c. ; of which it is not reasonable to presume I have better evidence. So to prove my father, mother, cousin, or other relation beyond the sea, dead : and the common reputation and belief of it in the family, gives credit to such evidence." Buller's N. P. 294. Similar doctrine has been many times approved of and applied in England, and in the federal and state courts in this country. 1 Phillips' Ev. 269, Cowen & Hill's note, 97 ; *Webb* v. *Richardson*, 42 Vt. 465. This would seem to sustain the ruling of the county court in this respect.

Judgment affirmed.