OLIVER T. OSBORNE vs. ALEXANDER TROUP AND ANOTHER.

New Haven and Fairfield Cos., April T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

It is provided by Gen. Statutes, § 1116, that "in every action for a libel the defendant may give proof of intention; and unless the plaintiff shall prove either malice in fact, or that the defendant, after having been requested by him in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved." In an action for a libel the court below found that no evidence was offered by the plaintiff that the defendants were actuated by malignity towards him, but further found that the motive for the publication was improper and unjustifiable, which was found as a conclusion of fact from the character of the article and from the circumstances attending its preparation and publication, these showing that there was not a reasonably careful investigation as to the facts, and that there was no sufficient occasion or excuse for the publication, and a reckless disregard of the plaintiff's rights and of the consequences that might result to him. Held to be a finding of the existence of malice in fact.

And held to be a finding of fact that could not be reviewed by this court.

And that the court made this finding upon proper evidence.

And held that, where malice in fact is proved, the plaintiff is entitled to recover general damages, although the defendant gives proof of intention, no retraction has been demanded, and special damages have neither been alleged nor proved.

Evidence was admitted on the part of the defendants that, after the suit was brought, one of the defendants went to the plaintiff's attorney and proposed to settle the matter and to publish a retraction. Held that the court properly refused to let the defendants go further and prove what was said between themselves and the attorney as to the publication of the retraction and as to the settlement, either to disprove malice in fact or in mitigation of damages.

The plaintiff in cross-examining a witness called by the defendants asked certain questions to which the defendants objected as not germane to the direct examination. Afterwards the witness, in testifying for the plaintiff in reply, went over the same facts, which were material to the case, and no objection was made by the defendants. Held that the ruling of the court was within its discretion, and that, if it had been erroneous, the defendants were not harmed by it.

Upon the question whether the symptoms in a certain case of mental derangement were those of acute melancholia, as claimed by the plaintiff, or of morphine poisoning, as claimed by the defendants, the latter

offered as a witness a nurse who had attended a patient suffering from the use of morphine, for the purpose of showing that the symptoms of acute melancholia were different from those described by the plaintiff's witnesses and that those shown in the case in question were like those of a victim of the morphine habit. It appeared that she had received no medical education nor any training as a nurse, that she did not know what quantity of morphine would be given by a physician in a dose, and had no other knowledge of certain cases to which she referred than any woman of ordinary intelligence might have had under similar circumstances. Held that she could not be regarded as an expert, and that her testimony was properly rejected by the court.

[Argued April 23d—decided May 25th 1891.]

ACTION for a libel; brought to the Superior Court in New Haven County, and tried to the court before *Fenn, J.* Facts found and judgment rendered for the plaintiff for three hundred dollars damages, and appeal by the defendants. The case is fully stated in the opinion.

*L. Harrison* and *E. Zacher*, for the appellants.

1. The court erred in finding the defendants guilty of malice in fact. This point must be considered in the light of Gen. Statutes, § 1116, which reads as follows :—" In every action for libel the defendant may give proof of intention ; and unless the plaintiff shall prove either malice in fact, or that the defendant, after having been requested by him in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved." This section was enacted in 1855 to protect newspapers from damages in those cases·where items are published in good faith or without malice in fact. It certainly was not the intention of the legislature to leave it to the courts to infer from the language of the publication malice in fact, unless there was evidence to prove such malice. If the statute is to be construed as the court below has construed it, then there is no relief furnished by it to the newspapers. The common law protected newspapers to the extent that, in the absence of malice in fact, and with no allegation of proof of special damage, there could

Osborne *v.* Troup.

be no judgment for a plaintiff, except where the charge contained language which was actionable *per se.* If the court can infer malice in fact from the mere language of the article complained of, then it is equivalent to saying it may in all cases find a judgment for the plaintiff, wherever the language is actionable in itself; and in some cases, under such a construction, the court might give substantial damages where none had been proved or alleged, and where the words were not even actionable *per se.* Such a construction of the statute being possible, it were better for the newspapers if it were repealed. The court finds that there was no evidence to show that the defendants were actuated by malignity or hatred toward the plaintiff. Mrs. Tyler and her friends believed the story that she was improperly confined, as described in the article published, to be true. When a considerable body of people who have knowledge of certain facts, believe a certain statement to be true, it furnishes strong evidence of the good faith of those who repeat or publish the story so believed to be true. If the story had been true, it was certainly the duty of the newspaper to publish it. No greater wrongs have been perpetrated at times than the improper confinement of sane persons by interested relatives. It is the duty of the press to turn the light of publicity upon private asylums. The defendants inquired of the city editor if the facts had been investigated and verified, and were informed that such was the case. The conduct of the principal defendant immediately after the publication shows that he was not actuated by malice. His interviews with the plaintiff's counsel and the publication of the retraction, show it. This court has in no case held that any such extreme meaning is to be put upon the words "malice in fact" as is attempted in this case.

2. Upon the finding of the court, and in the absence of any request on the part of the plaintiff for a retraction, and of any allegation or proof of special damage, and there being no evidence to show malice in fact except the inference drawn by the court as stated, the plaintiff was not entitled to a judgment. The object of the statute was to give news-

papers an opportunity to retract a libelous charge in as public a manner as that in which it was made. Note its language :—" To retract the libelous charge." If no request is made to retract the libelous charge then nothing but the actual damage specially alleged and proved can be recovered. The statute goes upon the theory that the charge must have been libelous. It cannot have been libelous unless it was malicious. Malice is an essential element to constitute a libelous charge. If the defendant by retracting a libelous charge can escape the payment of any damages except those that are specially alleged and proved, then it is certain that there must be cases, if the statute means anything, in which malicious articles may be published, and the defendant may escape the payment of damages if none are specially alleged, provided there is a retraction in a reasonable time. If this proposition is sound, then it is equally true that the defendant may escape the payment of damages in the case of certain libelous charges where special damages are not proved and there has been no written request for a retraction. If both these propositions are true, then the theory of the court in this case, in finding malice in fact and rendering a judgment for the plaintiff, must be unsound. An examination of the cases passed upon by this court since 1855 will not sustain the judgment rendered in this case upon the finding made. *Moore* v. *Stevenson*, 27 Conn., 27 ; *Hotchkiss* v. *Porter*, 30 id., 421 ; *Wynne* v. *Parsons*, 57 id., 77 ; *Arnott* v. *Standard Association*, id., 92. An examination of these cases leads to the conclusion that in cases under the statute, like the one at bar, the plaintiff must produce some other evidence than has been produced in this case to show malice in fact ; and that if he fails so to do he is not entitled to recover.

3. The court erred in rejecting the testimony of Mrs. Forbes. The evidence spread out upon the record shows that she had had experience with morphine cases and melancholia cases. The claim of the defendants in this case was, that the symptoms from which Dr. Thatcher and Dr. Osborne, and the keeper of the Cromwell Asylum, deduced the

conclusion that Mrs. Tyler was insane, were precisely the symptoms which a morphine drugged person would show. It had appeared that Mrs. Tyler had been treated with morphine, and Mrs. Forbes had known her for years. She had never seen any symptoms of insanity in her. After she had been treated with morphine she exhibited the same symptoms that morphine patients show. Her symptoms were described by Dr. Thatcher, Dr. Osborne, and Dr. and Mrs. Hallock to prove insanity, and to justify their expressed opinion. It will be noticed that the questions asked of Mrs. Forbes were not questions which require the trained knowledge of a medical expert. She was only asked to state what symptoms the lady who was afflicted with the excessive use of morphine showed while she was in the hands of Mrs. Forbes, who was her nurse. This question was asked in various forms, and all were excluded. They are not questions of opinions, but questions of fact which she could have testified to. It will be a dangerous precedent to establish, that the opinions of physicians on questions of insanity can only be rebutted by the opinions of other physicians, when in ordinary cases no other physicians could be produced who ever had charge of the patient. If the opinions of physicians based upon facts cannot be contradicted by facts which non-medical witnesses testify to, we shall be putting altogether too much power into the hands of the medical profession in will and insanity cases. Medicine is not yet an exact science in its application to the body. It is certainly much less exact when it attempts to deal with the mental conditions of men.

4. The court erred in rejecting testimony offered by the defendants to show what took place between the defendants and the counsel for the plaintiff, before and at the time of the publication of the retraction. It could have been excluded only upon the ground that conversations between parties to bring about a compromise are excluded. That rule is intended to protect parties against the effect of admissions which might be against their interest, if they are made at a time when negotiations for a settlement are being made.

This rule has recently been discussed in the case of *Brosch-art* v. *Tuttle,* 59 Conn., 1.   See also *Hartford Bridge Co.* v. *Granger,* 4 Conn., 142, 148 ; *Fuller* v. *Hampton,* 5 id., 416, 426 ; *Home Ins. Co.* v. *Baltimore Warehouse Co.,* 93 U. S. R., 527, 548.   In this case  the defendants did not offer to show any admissions made by the other side, but only to prove what was  said between themselves and  the  plaintiff's coun-sel concerning the publication of a retraction.    That was admissible, first, in  mitigation of  damages, and  secondly, to rebut any inference of malice in fact, which the court be-low did not find in this case by any positive testimony offered by the plaintiff, but only as an inference from such circum-stances concerning the publication as the admitted  evidence showed.

5. The court erred in admitting the testimony of the plaintiff in the manner set forth in the record.   If ques-tions upon cross-examination are admissible or inadmissible entirely within the  discretion of the court, and there is no limit to the  discretion, then  error  cannot be claimed under this assignment.   If, however, the generally understood rule is to prevail, it  is  difficult to  see how those questions were germane to any questions  concerning the treatment of Mrs. Tyler and the nature of the institution she was sent to.

*J. W. Alling,* for the appellee.

TORRANCE, J.   The plaintiff brought an action for libel against the defendants, as publishers of a newspaper, and the case was tried to the court and judgment rendered in favor of the plaintiff for substantial damages.    The court below made a finding of facts, and the case comes before us upon an appeal by the defendants.

In the reasons of appeal several errors are assigned.   The first is general in its nature, and under the statute cannot be considered.   The others will be considered in the order stated in the reasons of appeal.

The  first of the claimed errors is  thus stated :—" The court erred in rendering judgment for the plaintiff on the

finding, in the absence of any evidence showing that the plaintiff had ever requested the defendants to make a retraction in the manner provided by statute, and in the absence of any allegation or proof of special damages."

The record shows that no special damages were alleged or attempted to be proved. It also shows that the plaintiff never requested the defendants to make any retraction. The court does however find, as a matter of fact, and upon all the evidence in the case, "that there was malice in fact in the publication of the article complained of, and that said article was neither wholly nor substantially true;" that "the motive of such publication was wrong, improper and unjustifiable;" and "that there was not a careful or reasonable investigation as to the real facts, and no sufficient occasion or excuse for such publication, and that it was recklessly published in disregard of the plaintiff's rights and of the consequences that might result to him."

The published article complained of charged in substance that the plaintiff, in order to obtain the property of his wife's mother, persuaded her to make a will in his favor, and then, lest she should change or destroy the will, drugged her, and while she was unconscious from the effect of the drugs, caused her to be confined as a lunatic in an asylum.

The defendants, under section 1116 of the General Statutes, gave proof of intention. The court finds, from the evidence in the case, that the charges contained in the article were not true, and also "that there was malice in fact in the publication of the article complained of."

Assuming then for the present that the court has found upon proper evidence the existence of "malice in fact," within the meaning of the statute above referred to, it is somewhat difficult to see how the court erred in rendering judgment for the plaintiff for general damages. By the very terms of the statute, if the defendant gives evidence of intention, the plaintiff is barred of his right to recover general damages only in case he fails to prove "malice in fact" or a failure to retract upon request. If he proves "malice in fact" he is entitled to recover general damages, notwith-

standing the fact that the defendant gives proof of intention, or the fact that no retraction has been demanded, or the fact that special damages have neither been alleged nor proved.

Indeed, we perhaps do the defendant's counsel an injustice in supposing they make the claim in the form in which it appears in the reasons of appeal. In their brief it appears in this form :—" Upon the finding of the court, and in the absence of any request on the part of the plaintiff for a retraction, and of any allegation or proof of special damages, *and there being no evidence to show malice in fact except the inference drawn by the court,* as stated, was the plaintiff entitled to a judgment ?" This form of the claim assumes that " malice in fact " has not been proved.

This is entirely different from the error assigned in the reasons of appeal, unless we assume that the former is but an amplification of the latter, and perhaps this is the fairest way to regard the matter. This assumes that the plaintiff has failed to prove " malice in fact." If this assumption is correct, then undoubtedly the court erred in rendering judgment for the plaintiff. If it is not correct, if the court has correctly found upon proper evidence the existence of " malice in fact," then the court did not err in rendering judgment under the circumstances as claimed.

This leads to the consideration of the next reason of appeal, which is thus stated :—" The court erred in finding that the defendants were guilty of malice in fact, upon the facts found by the court."

The court below has found that at no stage of the case did the plaintiff offer any evidence to show that the defendants were actuated by malignity, spite or hatred towards the plaintiff, nor does it find that this was the case in point of fact. But the court further finds as follows :—" But that the motive of such publication was wrong, improper and unjustifiable, I do find, as a conclusion of fact from evidence derived from the character of the published article, and from the fact that in my judgment the article itself, and the evidence offered of the circumstances attending its preparation and publication, prove that there was not a careful or rea-

sonable investigation as to the real facts, and no sufficient occasion or excuse for such publication, and that it was recklessly published in disregard of the plaintiff's rights and of the consequences that might result to him."

This we feel bound to regard as a finding of the existence of "malice in fact" within the meaning of our statute, as it has been construed in the following cases : *Moore* v. *Stevenson*, 27 Conn., 14; *Hotchkiss* v. *Porter*, 30 id., 414; *Wynne* v. *Parsons*, 57 id., 73.

In the case at bar the question whether such malice existed was a question of fact, to be decided by the trier. The conclusions drawn by the court below, that the motive of such publication was wrong, improper and unjustifiable ; that there was no careful or reasonable investigation of the facts ; that there was no sufficient occasion or excuse for such publication ; and that it was recklessly made, in disregard of the plaintiff's rights and of the consequences that might result to him, must all be regarded, under the circumstances, as conclusions of fact. The evidence was of such a nature that the trier must determine, not only the facts which it established, but also the inferences to be drawn from such evidence and such facts. No general rule of law is applicable in such a case. Men equally honest, fair-minded and capable, might possibly draw different inferences as to whether there had been a reasonably careful investigation of the facts before publication, or whether there was a sufficient occasion or excuse for the publication, or whether it was made in reckless disregard of the rights of others. In such cases the trier or triers must of necessity determine whether "malice in fact" within the meaning of the statute existed or not, and the conclusions of the trier in such cases cannot, as a general rule, be reviewed as to the question whether it was or was not correctly drawn from the evidence and facts found. *Farrell* v. *Waterbury Horse R. R. Co.*, (*ante*, p. 239.) In accordance with these views the existence of malice in fact was held to be a question of fact, to be found by the jury, in *Moore* v. *Stevenson*, *supra*.

If however the question were one of law, which we could

review, we think the facts found justify the conclusions to which the court below came.

The real contention however of the defendants on this part of the case, as we gather from the brief, seems to be, that there was no legal evidence before the court from which the conclusions aforesaid could be drawn. The claim seems to be that the court below drew its inference chiefly, if not wholly, from the language of the publication itself. It is said in the brief:—"It certainly was not the supposition of the legislature which passed that statute, to leave it to the courts to infer from the language of the publication malice in fact, unless there was evidence to prove such malice." Again:—"If the court can infer malice in fact from the mere language of the article complained of, then it is equivalent to saying that the court may in all cases find a judgment for the plaintiff whenever the language is actionable in itself."

If the record furnished any foundation for such a claim it would be entitled to our serious consideration, but it has no foundation in fact. The record shows that the conclusions of the court were based upon "all the evidence in the case," upon "evidence derived from the character of the published article," and upon "evidence offered of the circumstances attending its preparation and publication." These "circumstances" were shown with minuteness and particularity. The language of the published article was only a part of the evidence, and, in connection with the other evidence, was a legitimate part of the evidence which the court might consider.

In speaking of the case of *Moore* v. *Stevenson*, 27 Conn., 14, this court, in the case of *Hotchkiss* v. *Porter*, 30 id., 421, said:—"By that decision it was settled that, under the act, the right of the plaintiff to recover general damages shall not depend on the mere legal presumption of improper and unjustifiable motive, derived from the fact of publishing that which is untrue, but upon the question whether such improper and unjustifiable motive has been proved or disproved, as a matter of fact, by evidence adduced for that purpose on

the trial; that the legislature did not intend to prescribe any new rule as to the kind or degree of malice, or as to the character or kind of evidence by which the existence of improper and unjustifiable motive should be proved; that all they intended was that the fact of improper and unjustifiable motive should appear in proof, and not be presumed; but whether in proof from *the character of the libel, the res gestœ or circumstances attending its publication,* or from evidence of other facts tending to show the real motive of the publisher, they did not intend to say." The conclusions of the court below thus seem to be based upon the kind of evidence which this court has said was legitimate and proper evidence.

The court below has thus, upon proper evidence, found as a fact the existence of "malice in fact," and, this being so, it did not err in finding the defendants guilty of "malice in fact," and it did not err in rendering judgment for the plaintiff for general damages.

The other errors alleged relate to the rejection and admission of evidence. The first relates to the rejection of the testimony of Mrs. Jane Forbes. The plaintiff had produced before the court as witnesses all the persons now living, and within the jurisdiction of this state, (including four physicians,) who had the charge of Mrs. Tyler, the mother-in-law of the plaintiff, during a period of mental derangement. They all testified to the symptoms of mental derangement manifested by her, which they considered evidences of insanity of the type of acute melancholia. The defendants, to rebut this evidence, offered no testimony from a physician or expert, but offered the testimony of Mrs. Forbes. She had known Mrs. Tyler for several years, but had not seen her at all during her sickness and derangement. She had on some occasions taken care of the sick in her own family, and had had for a few weeks the care of a person suffering from the morphine habit. Her testimony as to the symptoms manifested by the patient suffering from the morphine habit, whom she had attended for a few weeks, and her opinion based upon her experience as to the effect of morphine and other drugs upon the human system, was offered "for the purpose of

showing that the symptoms of acute melancholia were different from those described by the plaintiff and his witnesses, and also for the purpose of showing that the symptoms which Mrs. Tyler had manifested in her sickness were like those of the victim of the morphine habit whom Mrs. Forbes had attended."

Mrs. Forbes was really called as an expert, and the main purpose and object in calling her in rebuttal was that she might give her opinion as an expert. It is true that certain questions which did not call for an opinion were asked of her and excluded, but these were merely preliminary questions, and the answers to them would have been useless unless the witness had been allowed to express her opinion upon. Mrs. Tyler's condition, based in part at least upon such answers. If she ought not to have been allowed to testify as an expert, then the action of the court in rejecting her testimony, as it is stated upon the record, was right.

The court has found that she had received no medical education, nor any training or education as a nurse ; that she did not know anything about what quantity of morphine, bromide of potassium or chloral, were or would be given in any dose by any physician, and had no other knowledge of the cases to which she referred than any woman of ordinary intelligence might have had under similar circumstances. Under these circumstances the court did not err in rejecting her testimony.

The next error alleged is stated as follows :—" The court erred in rejecting the testimony offered by the defendants to show what took place between the defendants and the plaintiff's counsel before and at the time of the publication of the retraction."

It appears from the record that the present suit was instituted the next day after the publication of the alleged libel ; that immediately after the institution of the suit one of the defendants made an investigation in order to ascertain the truth or falsehood of the published story; that he was informed that Mrs. Tyler had not been drugged, but had been temporarily insane, and was fully advised of her condition

when brought to and while at the asylum; and that he opened negotiations with counsel for the plaintiff for a compromise and settlement of the case, and offered as a part of such settlement to publish a retraction. After this testimony had been admitted, the defendants then offered to show what "was said or passed between themselves and the plaintiff's counsel concerning the publication of a retraction and the settlement of the whole affair." This was offered "for the purpose of its being considered in mitigation of damages, and also for the purpose of showing, in connection with the other testimony which had been admitted, that the defendants were not guilty of malice in fact." The court on the plaintiff's objection excluded the testimony.

We think this testimony was rightly excluded. The defendants were permitted to show what they did, namely, that they opened negotiations for a compromise and settlement of the case and offered to publish a retraction. What was said in so doing was of no consequence. They were also permitted to show that they did publish a retraction, and to put the published retraction in evidence. This was certainly all and perhaps more than they were entitled to show in regard to this matter, either to mitigate damages or disprove malice in fact. The defendants did not claim on the trial that the plaintiff's counsel had made any independent admissions or admissions of any kind in their favor during the negotiations for a compromise and settlement, and if they had, we cannot, in the present state of the record, say that such admissions would necessarily be admissible in evidence against the plaintiff. Nor does it appear that the defendants made any statements during the negotiations in their own favor that would have been admissible. It was not even claimed on the trial that the rejected evidence would have explained in any way the apparent delay in publishing the retraction. The publication was made October 29th, 1889, and the retraction was published December 30th, of the same year. If it had been shown to have been admissible for the purpose of explaining this apparent delay, still, inasmuch as the court has found that the retraction was published in a reasonable

time under all the circumstances, its rejection would have furnished no ground for a new trial. We think the evidence in question was admissible neither in mitigation of damages nor to disprove malice in fact.

The last error claimed relates to the admission of the testimony of Dr. Osborne. It appears from the record that after the plaintiff had rested the defendants called Dr. Osborne as a witness and asked him a variety of questions. On cross-examination he was asked by the plaintiff's counsel certain questions, detailed on the record, which were objected to by the defendants for the reason that they were irrelevant and not pertinent to the direct examination. The court held them to be germane and relevant and admitted the testimony. Afterwards the points in question were testified to more fully and in detail by Dr. Osborne in his testimony in reply, and without objection; and they were material to the case. Therefore, even if it should be conceded that the court erred in admitting the testimony objected to, still its admission cannot possibly have harmed the plaintiff. Moreover we think the court did not err in admitting it. To say the least, it was clearly within the discretion of the court, and we think the discretion was wisely exercised.

There is no error in the judgment complained of.

In this opinion the other judges concurred.