this motion and contained in this record that this defendant would have procured other bidders at the sale if he had supposed it was to take place. It appears further that, if a resale should be ordered, the sum of at least $10,000 more than was bid at the sale would be bid and paid for said premises. This defendant ought not to be precluded from the benefit of obtaining all that can be secured for those premises. He has shown that at least $10,000 more will be obtained than was obtained upon the sale. There may be others desirous of purchasing those premises, who would pay a much larger sum therefor; and, if so, this defendant, interested in these premises, and in the amount which is to be realized upon the sale thereof, should be permitted every opportunity for procuring as large a price therefor as possible. The purchaser at such sale did not appear upon this motion, nor does he appear on this appeal, although duly notified of all the proceedings.

Plaintiff's counsel contended before the special term, and asserts upon this appeal, that defendant Catto is not interested in any way in the premises, and therefore ought not to succeed in his application. The record discloses that he was, at the time of the commencement of this action, and at the time of the making of this motion, the owner of the premises, and his title thereto had not in any manner been affected or impaired, except to such extent as the same will have been impaired and affected by the judgment of sale in this action. The plaintiff, by its verified complaint, alleges that he has, or claims to have, some title to, interest in, or lien upon the said mortgaged premises; so that his interest in these premises is, we think, sufficiently established.

We are therefore of the opinion that the special term, under the circumstances of this case, should have exercised the discretion resting in it, and granted the application of this defendant for a resale. That part of the order appealed from which denies the motion of the defendant Catto for a resale of the said premises, and the setting aside of the referee's deed, is reversed, with $10 costs and disbursements; and, inasmuch as the judgment has been vacated upon the motion of the defendant Foltz, no resale is ordered. All concur.

---

GILBERTSON v. FORTY-SECOND ST., M. & ST. N. AVE. RY. CO.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

1. DAMAGES—ELEMENTS OF RECOVERY—INSTRUCTIONS.
    It is reversible error in an instruction enumerating the elements of recovery to name an element as to which no evidence was given.

2. SAME—AMOUNT OF RECOVERY.
    An instruction that the jury may award damages "to any amount not exceeding" the sum demanded in the complaint is an intimation to the jury that, under the evidence, they have the right to render a verdict for the full amount demanded, and is therefore erroneous where the evidence would not sustain a verdict for the full amount.

3. CARRIERS—INJURY TO PASSENGER LEAVING CAR—INSTRUCTIONS.
    A complaint for an injury received by a passenger while leaving defendant's street car alleged that, while plaintiff was attempting to alight "after

the said car had been stopped," it was negligently started, causing plaintiff to fall. Plaintiff testified that, before she alighted, the car had come to a full stop. A witness for plaintiff testified that the car had not come to a full stop when plaintiff attempted to alight. After recess, the witness was recalled, and she contradicted her testimony. All the other witnesses who saw the car at the time of the accident testified that it did not stop until after plaintiff had fallen. *Held,* that the error in charging that the jury could find for plaintiff in case they found that the car had not stopped, but, while moving slowly, suddenly started, and threw plaintiff to the ground, was not cured by afterwards charging that if plaintiff alighted from the car while it was in motion, if the jury believed that plaintiff was not injured through the starting of the car after it had started, the verdict should be for defendant, and that the only negligence attempted to be shown was the starting of the car after it had fully stopped.

Appeal from trial term, New York county.

Action by Mary L. Gilbertson against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company. From a judgment entered on a verdict in favor of plaintiff for $10,865.66, damages and costs, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

W. H. Page, Jr., for appellant.

S. H. Randall, for respondent.

VAN BRUNT, P. J. This action was brought to recover for injuries claimed to have been sustained by the plaintiff on the 26th of August, 1893, while alighting from a car of the defendant. The accident happened at the intersection of Sixty-Eighth street and the Boulevard. That the plaintiff was thrown down upon alighting from one of the defendant's cars, and received serious injuries, seems to have been satisfactorily proven. The questions litigated were whether the defendant was guilty of negligence, and whether the plaintiff had shown herself free from contributory negligence. During the progress of the trial, various exceptions were taken, some to the rulings of the court upon the question of the qualifications of jurors, some to the rulings upon questions of evidence, and some to the charge as made by the court. While many of the other questions presented are extremely serious in their nature, in view of the conclusion at which we have arrived in respect to two of the exceptions to the charge, it does not seem necessary that we should consider those questions.

The learned court, after addressing the jury upon the facts of the case, charged as follows:

"No matter how great the negligence of the company may have been, you cannot add one dollar to the verdict except by way of compensation. Compensation takes in pain and suffering; takes in the loss of earning power. It takes in apprehension. It takes in the injury to the person even if it extends to the end of life, if the evidence satisfies you that the disability will so far extend. There is no rule except the intelligence, the experience, and the honor and honesty of the jury to determine this."

The counsel for the defendant excepted to the charge of the court allowing the jury to take into consideration, in measuring

damages, the apprehension of the plaintiff. The court had already charged that the jury were to take into consideration pain and suffering and loss of earning power, and, then as an additional element of damage, stated, "It takes in apprehension." There was no evidence whatever in the case showing that the plaintiff had suffered in the slightest degree from apprehension; and it seems to be reasonably well settled that, where there is an element submitted to the jury for consideration in the way of damages, evidence of the existence of that element must have been presented, or it is error to submit such an element to the jury. In the case of Leeds v. Gaslight Co., 90 N. Y. 27, the evidence showed that the plaintiff was engaged in business at the time of the injury, and had not been able to attend to it since; and it was held error to charge the jury that the plaintiff was entitled to recover compensation for the time lost, in the absence of evidence showing what the business was, or the value of his time, or any facts as to his occupation. The court stated that the jury were left to guess at or speculate as to the value of lost time, without any basis in that respect for the judgment to rest upon. In the case at bar, without any proof whatever that any apprehension existed, the jury are instructed that they may award compensation for apprehension. It seems to us that this is going much further than the court went in the case of Leeds v. Gaslight Co., supra, because in that case it appeared that, prior to the happening of the accident, the plaintiff had been engaged in business, but had not been able to pursue his occupation since that time; and it was held that, notwithstanding this, there being no proof as to the nature of his business or the value of the time lost, it was error to allow it to be considered by the jury as an element of damage.

Upon the termination of the judge's charge, the counsel for the plaintiff made the following request:

"I ask your honor to charge the jury that, taking all the elements into consideration, the jury may award her compensation, fair, reasonable, and just, to any amount not exceeding thirty thousand dollars."

This the court charged, and the defendant excepted. This was an intimation to the jury that, under the evidence which had been produced upon the trial, they would have had the right to render a verdict for $30,000, which was clearly not the fact; and this intimation upon the part of the court in regard to the nature of the evidence may have affected their consideration, and may have been in some degree the cause of the large verdict which was rendered. Such a charge was eminently calculated to mislead the jury, and to cause them to regard the evidence of the injuries sustained as of greater gravity than its actual purport required. The learned court did not charge that the plaintiff claimed $30,000, and that the jury were entitled to award such sum as the evidence justified not exceeding that amount, but did charge them that they might award $30,000; clearly intimating that such a verdict might be upheld upon the evidence in the case. It is evi-

dent that a verdict for any such sum would have been extremely excessive. It is also quite clear that the verdict actually rendered was larger than the evidence in the case seems to justify. It appears to us that, in consequence of the errors to which attention has been called, the jury were not correctly instructed in regard to the rule of damage, and seem to have been misled.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J.   I concur with the presiding justice in the conclusion that there should be a new trial, as I do not think that the real question in this case was fairly presented to the jury. The plaintiff, on her direct examination, did not testify as to whether or not the car stopped before she attempted to alight, but on cross-examination she testified: "I did not get up from my seat at all before the car came to a full stop;" and again: "The rear end of the car, it just passed the street,—just passed the upper part of the street,—and then it came to a full stop. Then I got my left foot down on the step. My right foot was on the step. My left foot was also on the step. Both feet were on the step. My hand was still holding the rail when the car started. I put one foot down, and, before I could put the other down, the car started." The complaint expressly alleges that the plaintiff, "while attempting to alight therefrom, after the said car had been stopped, by the improper, negligent, and careless starting of said car by defendant's servants, ere giving the plaintiff the opportunity to leave the same, whereby she was thrown off and from said car suddenly and violently, into the street, to the ground," was injured, etc. Thus, the plaintiff's cause of action, as alleged in the complaint, and as sworn to by herself upon the trial, was based upon the negligent starting of the car before the plaintiff had an opportunity to alight. One of the witnesses called by the plaintiff contradicted the plaintiff as to the stopping of the car, and testified that the car did not come to a full stop. "It kind of stopped. It did not stop, but it went easy." It appears by the record that after recess this witness was recalled, and, upon being asked, "Did you see the car stop?" she answered, "Well, I did. The car stopped, and, when it did stop, it only stopped a minute or two, and, as she was going out, the car started again. That is just exactly what happened." This testimony was after seeing and talking with the counsel for the plaintiff at the recess. The daughter of this last witness testified that she saw the plaintiff lying on the ground by the car a little below the down-town side of Sixty-Eighth street and the Boulevard; that "the car stopped after she (the plaintiff) fell. It only stopped once. That is the only time I seen it stop." "As it came along across Sixty-Eighth street, it did not stop until after Mrs. Gilbertson had fallen out. No, sir; I didn't see it stop until after she fell out, and I was looking at the car for my husband." Then, in

answer to a question by the plaintiff's counsel, "Do you mean to say that the car had not stopped before she fell out?" Answer: "No, sir; it had not stopped until after she fell out." The defendant called a passenger of the car, the driver, and a policeman, who swore that the car did not stop until after the plaintiff attempted to alight.

The plaintiff's cause of action thus being based upon the allegation that the car did stop, but before she had an opportunity to alight it was started, throwing her to the street, the court charged the jury as follows:

"Now, gentlemen, her story is this, and she is to be judged by that: 'I got upon this car as a passenger, and I paid my fare. At a certain point in the city of New York I asked the conductor to stop. He rang the bell, and the car got there to a full stop, or so very slow as to be hardly in motion;' and then she got up and put her foot down towards the road, or towards a portion of the car which would be a step towards the road, not touching the road; and in that condition the car started up, and threw her off the car. * * * She says the car slowed so as to be barely, if at all, in motion, and that while she was endeavoring to put her foot to the street, and had not left the car, it started suddenly. If the company did that, it did wrong; and if you credit this story, that she didn't have time to leave the car, and that, while standing upon the step, the car started suddenly, and threw her into the street, in the condition of leaving the car,—if you find that to be the fact,—this case is proven one step only."

This charge of the court to the jury as to the plaintiff's story gave an erroneous statement of the effect of her testimony. She nowhere stated that the car had barely stopped or was slightly moving at the time she attempted to alight. She stated positively that it had stopped, which statement was contradicted by all of the witnesses who saw the car, except the one witness for the plaintiff who had first said the car had not stopped, but subsequently changed her testimony. The effect of this instruction was that the jury could find for the plaintiff in case they found that the car had not stopped, but, while moving slowly, suddenly started, and threw the plaintiff to the ground, of which there certainly was no evidence. Considering the evidence as it stood before the jury at the end of the case, the fact that the plaintiff was contradicted as to the stopping of the car by every witness who saw the accident or had noticed the car, except the one witness who had first sworn positively that the car did not stop, and afterwards that it did, and considering the circumstances under which this change of testimony was brought about, I think that the issue should have been clearly presented to the jury, calling their attention to the distinct fact alleged upon which negligence was predicated, and not in a way that would apparently justify a verdict for the plaintiff, without their finding that the car did come to a full stop, and that the accident occurred in consequence of the failure of the defendant's employés to give to the plaintiff sufficient time to alight from the car in safety. This condition was emphasized by the instruction given when the court's attention was called to the charge on this point. Counsel for the defendant saying: "Your honor has charged in various places that the plaintiff, I think, stated that either the car had come to a stop, or

was slowing up when she jumped off. I submit that the testimony is that the plaintiff stated positively that the car had come to a full stop." The court answered: "Well, that is so much the worse. If the car started after coming to a full stop, before she had time to alight, that would be negligence, but her story was not quite that. It is for the jury to say;" thus emphasizing the former instruction, the effect of which was that the jury would be justified in finding a verdict for the plaintiff, although the car had not come to a full stop before she had time to alight. It is true that the court subsequently charged, at the request of the defendant, that if the plaintiff alighted from the car while it was in motion, and before it had come to a full stop, and that if the jury believed that the plaintiff was not injured through the starting of the car after it had stopped, the verdict should be for the defendant; and that the only negligence attempted to be proved in the case was the starting of the car after it had fully stopped, and before the plaintiff had an opportunity to alight. I do not think that these instructions can be said to have cured the error in the charge as made, which was certainly calculated to confuse the jury as to the direct issue presented to them by the pleadings; especially when it was emphasized by the court, on his attention being called to his incorrect statement which had been given of the plaintiff's testimony.

The verdict was very large. There seems to have been a clear preponderance of evidence for the defendant; and, considering the way in which the case was submitted to the jury, it seems to me evident that the jury did not have a clear perception of the question that they were to determine. For that reason there should be a new trial.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ., concur.