## MORNING UNION CO. v. BUTLER.

(Circuit Court of Appeals, Second Circuit. January 7, 1907.)

No. 13.

1. LIBEL—MALICE IN FACT—EVIDENCE TO ESTABLISH.

That the publisher of a newspaper retained an article clipped from another paper, containing statements in regard to plaintiff which were manifestly libelous if untrue, for three days and then paraphrased and published the same without having made any inquiries as to its truth, indicated a reckless disregard of plaintiff's rights which warranted a jury in finding that there was "malice in fact" within Gen. St. Conn. 1902, § 767, and in awarding general damages thereunder.

2. SAME—ACTION—INSTRUCTIONS.

Requests for instructions by the defendant in an action for libel considered and held properly refused as either covered by the charge given or as incorrectly stating the law applicable to the issues and evidence.

In Error to the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon writ of error to review a judgment of the Circuit Court, District of Connecticut, entered upon the verdict of a jury against plaintiff in error, who was defendant below.

W. H. Comley, Jr., for plaintiff in error.

G. D. Watrous, H. H. Townsend, and Harry G. Day, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The action was brought to recover damages for a libel published August 15, 1903, in defendant's newspaper the Morning Telegram and Union. The verdict was for $1,550. There is no dispute that the article was libelous and false. The complaint averred that, by reason of the publication, "plaintiff has been, still is, and will be, greatly and permanently injured in her good name and credit, and has suffered great mental anguish and bodily pain, and her health has been to such an extent impaired that she is, and will be, physically and mentally incapacitated from performing her professional duties and earning a livelihood as a professional wing and rifle shot and actress, whereby the plaintiff has suffered and will suffer heavy pecuniary loss." No evidence was introduced showing any special pecuniary loss; the plaintiff merely testifying that she "had felt much shame at the publication of such a story, and had been so affected in health that she was obliged to cancel all engagements for public exhibition of rifle shooting." The defendant's main contention is that, there being no proof of any damages which are capable of measurement in terms of money—such as loss of business, loss of advantage to be gained under some contract, etc.—plaintiff was not entitled to recover any general damages, but, at most, nominal damages. This contention is based upon section 767 of the General Statutes of Connecticut of 1902, which reads as follows:

"767. In every action for libel the defendant may give proof of intention; and unless the plaintiff shall prove either malice in fact or that the defend-

ant, after having been requested by him in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved."

The defendant put in evidence, tending to show that its intention was merely to publish what it believed to be true, and an item of public interest, and that it had no personal ill will towards the plaintiff. No request for a retraction was ever made. The difficulty with defendant's argument is that the undisputed facts in the case warranted a finding by the jury that "malice in fact" was shown, and their verdict shows conclusively that they did so find. It appeared on defendant's own proof that on August 11, 1903, its night editor clipped from the New Haven Leader an article containing libelous statements touching the plaintiff, substantially the same as those here complained of, alleging that plaintiff had been on that day arrested and brought before the Harrison street police court in Chicago charged with a misdemeanor, and that she was a physical wreck from the use of drugs. The night editor kept this Leader article three days, and then paraphrased it and published it in his own paper. During the interval he neither made nor instituted any inquiry whatever as to the truthfulness of any of these statements, although manifestly they were of such a character that, if false, they would work a very cruel wrong and injury to the plaintiff. Of such a method of publication this court remarked in Bennett v. Salisbury, 78 Fed. 769, 24 C. C. A. 329:

"It has become the course of business of newspapers of this class [the New York Herald] to receive announcements of this character from news bureaus and from numerous special correspondents who are scattered over the country, and it has become the custom of some daily journals to rely upon the good faith and accuracy of these correspondents and to publish in substance whatever they sent over their own signatures without further investigation into its truthfulness, and in an action for libel, when the falsehood of the publication was manifest, to attempt to ward off the charge of recklessness by saying that the information was received and was published in the usual course of business. Neither judges nor juries have been satisfied with the sufficiency of this kind of care. It is so insufficient as to be justly regarded as an absence of care, and as recklessness with respect to the rights and reputations of strangers to the publisher. The excuse was itself regarded as indicative of a careless indifference to and ignorance of the obligations of an owner to use his property so as not to injure others."

Referring to the very statute now before us, the Supreme Court of Errors of Connecticut has held that it was not improper to draw an inference that there was "malice in fact" when it appeared from the circumstances attending the preparation and publication that there was not a careful or reasonable investigation as to the real facts, and no sufficient occasion or excuse for such publication, and that it was recklessly published in disregard of the plaintiff's rights and of the consequences that might result to him. Osborne v. Troup, 60 Conn. 485, 23 Atl. 157. See, also, Moore v. Stevenson, 27 Conn. 14; Hotchkiss v. Porter, 30 Conn. 414; Wynne v. Parsons, 57 Conn. 73, 17 Atl. 362. There was sufficient evidence in this case to warrant a finding of "malice in fact" and that the jury so found is manifest from their verdict taken in connection with the instructions given to them.

The court charged that the case was not one which called for the infliction of punitive damages; that the statute provides that defendant may, if it can, prove that in making a publication it acted with proper and justifiable motives, with the intention of publishing current news and a just and fair criticism of matters in which the public is legitimately interested; that, in the language of the statute, unless the plaintiff shall prove malice in fact, he shall recover nothing but such actual damage as he may have specially alleged and proved; that, notwithstanding the evidence which had been presented bearing upon that question of intention, if the jury "shall find from the character of the libel and from the circumstances attending the publication, taking into consideration all the evidence offered by both parties in relation thereto, that there was not a reasonable or careful investigation as to the real facts, and that there was not sufficient occasion or excuse for such publication, but that it was recklessly published, in disregard of the plaintiff's rights and of the consequences that might result to her, that will be sufficient to constitute malice in fact within the meaning of the statute." And he added:

"If you shall take the view of these matters which I have just suggested to you, then it would be within your province to find such damages as would fairly and reasonably compensate the plaintiff for her injuries as alleged in the complaint."

Unless they took the view suggested they certainly could have brought in no substantial verdict for the plaintiff under this charge. No exceptions were reserved to any part of the charge, but only to the refusal to charge certain requests.

The first of these was to the effect that if the jury failed to find actual damages, and failed to find malice in fact their verdict must be for the defendant. This practically asserts that if plaintiff cannot prove actual special damage, nor prove actual malice, he cannot, in the event of a libelous publication, obtain even the verdict for nominal damages which will clear his character by finding the charges against him to be false. The Connecticut authorities above cited would seem to indicate that if the statute were given any such meaning it would be unconstitutional.

The second sets forth elaborately and in great detail what constitutes "actual damages." In view of the single question submitted to the jury, viz., whether there was malice in fact, such definition was academic.

The third question deals with mitigation of damages in view of honest publication of a news item, etc.; but there is no question of "mitigation of damages" in this case. If defendant could satisfy the jury that his conduct was such as this request indicates, then he would negative "malice in fact" and there would be no general damages at all, and therefore nothing to mitigate.

The next two requests—as to considering all the evidence, and as to burden of proof—were fully covered by the charge.

The other requests present counsel's views as to the value of newspapers, as to what are legitimate items of news, as to the object of the Legislature of Connecticut in passing the statute above quoted, and as

to the harmlessness of such an article to plaintiff's credit or reputation. They need not be discussed. The court did not err in refusing to charge them. The colloquium of the charge gave the jury all the instructions they required to deal with the plain and simple question submitted to them.

It is further assigned as error that the court allowed plaintiff to testify that her health was affected by the publication, so that she had to cancel all the engagements she had. The only ground of objection interposed to the introduction of such testimony, however, was that it was "not admissible under the allegations of the complaint." This objection is unsound as reference to the quotation from the complaint, supra, will show. As to any further question not raised by objection and exception, this court will not inquire.

The judgment is affirmed.