## SHAWNEE GAS & ELECTRIC CO. v. HUNT.

No. 1557.    Opinion Filed March 19, 1912.

(122 Pac. 673.)

1. **EVIDENCE—Expert Testimony — Competency — Graduate Nurse.** A graduate nurse who has never nursed a case of epilepsy is not competent to testify as to whether certain symptoms indicate epilepsy; it not appearing from the evidence that nurses, as part of their training as such, are taught to diagnose diseases.

2. **SAME—Examination of Witnesses.** It is proper to ask a witness who testified as an expert what causes, in his opinion, produced certain results. Such a question is not objectionable as calling for a conclusion of the witness, nor as invading the province of the jury.

3. **HYPOTHETICAL QUESTIONS—Sufficiency.** For a hypothetical question held not improper, see opinion.

4. **PARENT AND CHILD—Actions for Injuries—Damages.** In a suit for personal injuries brought by a child eleven years of age, it is error to instruct the jury to take into consideration his loss of time, the effect the injury will have on his ability to follow his trade or calling, without limiting in the instruction his recovery on this account to such time as he would become entitled to his earnings as against his parents.

5. **TRIAL—Instructions — Evidence to Support — Damages.** Where the testimony shows that plaintiff in a personal injury suit had been treated by physicians for some time, but does not show the value of their services, it is error to instruct the jury in assessing damages to take into consideration the medical care and attention plaintiff received, so far as shown by the evidence.

6. **EVIDENCE—Expert Testimony—Hypothetical Questions — Form.** A mere statement to an expert witness introductory to a hypothet-

ical question as to what the examiner intends to state in the question, adding nothing to the facts stated, does not render the question improper.

7.  SAME.  In an action for personal injuries, a hypothetical question as to the cause of plaintiff's condition, containing more than 500 words, is not improper if intelligible, though somewhat complicated and not entirely grammatical.

8.  SAME—Examination of Witnesses—Assumption as to Facts.  A hypothetical question to an expert is not objectionable as assuming material facts which the evidence does not fully tend to establish, where there was some evidence of all the material facts assumed.

(Syllabus by Rosser, C.)

*Error from Superior Court, Pottawatomie County;
George C. Abernathy, Judge.*

Action by William O. Hunt against the Shawnee Gas & Electric Company.  Judgment for plaintiff, and defendant brings error.  Reversed and remanded.

*Shartel, Keaton & Wells* and *Edward Howell,* for plaintiff in error.

*Blakeney & Maxey,* for defendant in error.

Opinion by ROSSER, C.  This is an appeal from the superior court of Pottawatomie county.  The plaintiff, William O. Hunt, brought suit against the Shawnee Gas & Electric Company to recover damages for personal injuries alleged to have been sustained by coming in contact with a guy wire, or a wire clothes line in contact with the guy wire.  There was a judgment for plaintiff in the lower court.

The defendant assigns as error that Mrs. Hunt, mother of plaintiff, was permitted to testify at the trial that her son was suffering from an epileptic condition.  She based this opinion as to epileptic condition upon the fact that there were circles around his eyes; that his eyes were red; that his lips would turn black or dark; and his face unusually white.  Mrs. Hunt is a graduate nurse, but had never nursed in cases of epilepsy, though she had nursed in families some of the members of which were epileptics.  Her testimony as an expert as to what these symp-

toms indicated was not admissible. There was no proof in the case showing that nurses, as part of their training, are required to learn to diagnose diseases. There being no proof of that sort, the court could not presume that a nurse must learn the diagnosis of diseases as part of her training as such. It cannot be denied, as contended by defendant in error, that a nurse is competent to testify that a person has had a "fit," but it is not contended in this case that the plaintiff had what is commonly called a "fit," but merely epileptic conditions, as shown by certain symptoms. As to this, the nurse was not competent to testify under the proof offered. Any person could testify as to whether or not another had had a "fit," but it might require considerable study of diseases to be able to testify whether a "fit" was of epileptic character.

The cases of *Mason v. Fuller,* 45 Vt. 29, and *Thayer v. Davis,* 38 Vt. 163, cited by defendant in error as sustaining the view that a nurse could testify as an expert, are not in point. Those were cases where nurses, who had waited on women in confinement, were permitted to testify as to whether or not births were premature. Such a question is determined upon physical facts, easily seen and comprehended, and could be learned by any person from very little observation, and without any professional training. The cases are entirely different. It is believed that it is safer to confine expert testimony, in which the witness is permitted to give an opinion, to those persons who have had special training in the diagnoses and treatment of diseases. Wigmore on Evidence, sec. 687; Chamberlayne on Evidence, sec. 913; *Osborne v. Troup,* 60 Conn. 485, 23 Atl. 157.

Of course a person without professional skill, who has observed another whose condition is under investigation, may be permitted to testify as to whether or not his condition is normal or abnormal, as for instance whether he is sane or insane, but it is not safe to permit any one except physicians to make distinctions as to what particular diseases or ailment the abnormality points to, as for instance with what particular form of insanity a patient is affected.

The following hypothetical question was asked Dr. Blickensderfer, witness on behalf of plaintiff:

"Doctor, I want to state the conditions of this alleged shock, as they were supposed to have been seen on the 10th day of June, 1908, and prior to that so the hypothetical question will be based upon the shock received at that time, and I want to ask you this question: Would a boy ten years and ten months old, who had been a normal child from birth to such age, and who had never had the diphtheria, scarlet fever, pneumonia, septis, never suffered from any form of blood poison, toxine, St. Vitus dance, if such boy being normal, as other boys of his age, of the average weight and stature, exhibiting normal desires for play and association with other boys as other boys of his age do; if upon the 10th day of June, 1908, should receive an electric shock on a live wire connected or in contact with a wire carrying 2,300 volts, being at this time accompanied with an associate and playfellow of about the same age, who received at the same time a shock causing his death, from coming in contact with the same wire and of about the same voltage, in a few feet of this boy; and upon being removed from the place of accident in a semiconscious, dizzy, and dazed condition where his mother was, who at once, or within twenty minutes, dug a hole, placed his feet therein, and who at the time was under the impression that he was being buried in such hole, and who at the time of the shock felt the sensation of needles and pins sticking in him, and a short time afterwards, within an hour or probably a half hour, when seen on the place, was in a semiconscious condition, his lips blue, his face around and under his eyes black, the pupils of his eyes dilated; remained some time in this semiconscious condition, and subsequently had spells of dizziness and pains in the region of his heart, and epileptic symptoms at night; wrings his arms at night; and at these times has difficulty in breathing, is treated by sitting up and being fanned, and at these times his extremities are cold and probably from his feet to his knees; he refuses to play with other associates, or to associate with other boys of his age; his heart is irregular in action, the apex beat displaced downward and to the left about an inch, the muscles of his heart weakened and incapable of continual labor, incapable of following the ordinary occupations of life requiring continual mental exertion or physical exertion, or both; and tender spots along the tips of the joints of his backbone varying at times and places, different at different times and at different places, if at the time of receiving the shock the boy had not had any serious

disease producing any of these symptoms that I have mentioned; and the boy's weight showing a loss of about ten or twelve pounds a year after the supposed shock—what would you say was directly or indirectly the cause of this condition?"

The defendant contends that this question was improper, first, because of the explanation or direction given to the witness by counsel for plaintiff at the beginning of the question; second, because the question is so obscure and confused as not to call for a clear, intelligible, and definite answer; third, because the question assumes material facts which the evidence does not fully tend to establish.

No authorities are cited in support of the first contention; it does not seem to be supported by reason. It was a mere statement to the witness as to what the examiner intends to state in the question, and adds nothing to the facts as stated, and does not appear to require any particular answer. Where experts are called as witnesses, it is usual and not improper to inform them beforehand as to the nature of the question they will be called upon to answer, and there is no reason why a statement of this sort to a witness upon the stand should be more improper than it would be in the lawyer's office before the trial began.

That the question is somewhat complicated is apparent. It is almost impossible to state a question of more than 500 words, as this one contains, without making it complicated. It is very doubtful if any juror is ever able to follow a hypothetical question sufficiently to remember and consider it in detail in the making of a verdict. The question, while it is not entirely grammatical, is intelligible.

There was some evidence of all the material facts assumed in the hypothetical question, and this objection must likewise be decided against the defendant.

It is further contended by defendant that the question is objectionable because it concluded by asking the witness what he would say was directly or indirectly the cause of the condition. The ground of this objection is that it is calling for a conclusion of the witness, and that it usurps the functions of the

jury. This view is supported by numerous authorities. The views of those courts who upheld the contention is well illustrated by the case of *Aetna Life Ins. Co. v. Bethel,* 140 Ky. 609, 131 S. W. 523, where it was held improper to ask a physician whether in his opinion auto-intoxication was caused by a fall. The court said the witness should have been asked if in his opinion the fall would produce auto-intoxication. In one case it is said the distinction is clear to a legal mind. But the trouble is that the question is asked for the assistance of the jury, and the jury is not composed of men with legal minds. When the conditions are stated which exclude all other causes for auto-intoxication except a fall, what particular difference is there between the question, "now, with all these other causes excluded, and the fall shown, would the fall produce auto-intoxication?" and the question, "with all these other causes excluded, and the fall shown, did the fall produce auto-intoxication?" The only logical deduction from the answer to the first question is the same as the answer to the second question. To quote from the opinion of Justice Mitchell in *Donnelly v. St. Paul City R. Co.,* 70 Minn. 278, 73 N. W. 157:

"Neither do we appreciate the fine distinctions sometimes sought to be drawn between asking an expert whether, in his opinion, certain causes might produce certain results, and asking him whether, in his opinion, they did produce such results."

It is believed the better reason supports the view that an expert can state that in his opinion certain causes did produce certain results. After all, the jury is not compelled to follow his opinion. They may not believe his opinion the correct one. This view of the question is supported by *Cooper v. St. Paul,* 54 Minn. 379, 56 N. W. 42; *Davey v. Janesville,* 111 Wis. 628, 87 N. W. 813; *Crouse v. Chicago & N. W. R. Co.,* 102 Wis. 197, 78 N. W. 446, 778; *Selleck v. Janesville,* 100 Wis. 157, 75 N. W. 975, 41 L. R. A. 563, 69 Am. St. Rep. 906; *Nebonne v. Concord Railroad,* 68 N. H. 296, 44 Atl. 521; *Gault v. Concord Railroad,* 63 N. H. 356; *Poole v. Dean,* 152 Mass. 589, 26 N. E. 406; *Snow v. Boston & Maine R. Co.,* 65 Me. 230; *M., K. & T. Ry. Co. v. Criswell,* 34 Tex. Civ. App. 278, 78 S. W. 388.

The court instructed the jury upon the measure of damages, as follows:

"You are further instructed that, if under the evidence and instructions of the court you find for the plaintiff, then, in estimating the plaintiff's damages, it will be proper for the jury to consider the effect of the injury, in the future, upon the plaintiff's health. If you believe from the evidence that his future health will be affected by the injury in question, and his ability to attend to his affairs in general in pursuing his ordinary trade or calling, if the evidence shows that those may be affected in the future, and also the bodily pain and suffering, the necessary expenses of nursing, the medical care and attention, and the loss of time, so far as they are shown by the evidence, can be treated as the result of the injury complained of."

The giving of this instruction is assigned as error.

The plaintiff was a child less than eleven years old at the time of the accident. He had no trade or calling, and was too young to have one for some time. His earnings, before majority, if any, would have belonged to his mother. The instruction should have limited the recovery on account of trade or calling to a period after he came of age. *Western & A. R. Co. v. Young,* 83 Ga. 512, 10 S. E. 197. The instruction with reference to measure of damages should always follow the evidence. *Fisk v. Chicago, M. & St. P. R. Co.,* 74 Iowa, 424, 38 N. W. 132; *Moellman v. Gieze-Henselmeier Lbr. Co.,* 134 Mo. App. 485, 114 S. W. 1023; *Ala., G. & S. R. Co. v. Davis,* 119 Ala. 572, 24 South. 862; *Gilbertson v. Forty-Second St. R. Co.,* 14 App. Div. 294, 43 N. Y. Supp. 782; *Derr Construction Co. v. Gelruth,* 29 Okla. 538, 120 Pac. 253. In fact all instructions should be based on the evidence in the case, and when they do not follow the evidence, and are calculated to mislead the jury, the case must be reversed. *Kingfisher Nat. Bank v. Johnson,* 22 Okla. 228, 98 Pac. 343.

The evidence shows that two physicians had treated the plaintiff for considerable time before the trial, and had made numerous examinations in order to ascertain what his condition was. There was no proof as to the amounts paid them or due them for their services. Under this state of facts it was error

to give the instruction with reference to medical services. This case cannot be distinguished from the case of *Derr Construction Co. v. Gelruth, supra.* In that case it was held that where the proof showed several physicians had attended a person, but neither the number of days of the attendance nor the value thereof was proved, it was error to instruct the jury to take into consideration, in assessing damages, "such medical expenditures as he incurred, if any." It is contended by plaintiff that the expression, "so far as they are shown by the evidence," as used in the instruction given, would prevent the jury from assessing any damages for medical services, because the evidence did not show their value. If no services had been shown, and if it had not been shown that physicians attended upon the plaintiff, then his contention might be sustained. But, where the proof shows that physicians had attended, it is very probable that the jury would take into consideration the services rendered, although the price had not been proven. There is no distinction between the expression, "if any," in the case of *Derr Construction Co. v. Gelruth, supra,* and the expression, "so far as they are shown by the evidence," in the instructions complained of in the present case.

The question of whether or not the plaintiff, being supported by his mother, could recover for medical services she was compelled to pay is not raised in the briefs of counsel in this case, and is not considered here. A number of questions are raised in briefs of counsel, but as they are not likely to arise upon another trial they will not be considered.

For the errors stated, the cause should be reversed and remanded.

By the Court: It is so ordered.