LYDIA PETERSON *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

June 12, 1888.

**Rescission of Release obtained by Fraud—Reliance on Statements.** The plaintiff assumed to rescind a release of her claim against defendant, on the ground that it was procured by a false and fraudulent statement of defendant's agent that her physician had stated that "her injuries would soon be cured with proper treatment." *Held*, that it was not necessary that she should have entertained an unquestioned and positive belief in the correctness of the alleged opinion of the physician. It was sufficient if she so far relied on it and was so far influenced by it that it was the inducing cause of her executing the release.

**Same—When Right to Rescind Accrues.**—To entitle a party to rescind, it is not necessary that he should first have positive knowledge of the falsity of the representations. The right of rescission depends on the existence of the fraud, and not on the certainty of the party's knowledge of the fact.

**Expert Witness—Hypothetical Questions to Physicians.**—In propounding hypothetical questions to medical experts, it is the privilege of counsel to assume any state of facts which there is evidence tending to prove, and to have the expert's opinion based upon the facts assumed. Such facts are assumed only for the purposes of the question.

**Same—Question as to Probability of Recovery.**—In a hypothetical question embodying plaintiff's assumed symptoms and condition, it is not error to ask a medical expert what in his judgment was the *probability* of recovery.

**Charge of Court to be Taken as a Whole.**— The whole charge of the court must be considered together, and an omission to state the whole law of the case in one instruction is not error, if the omission is fully supplied elsewhere, so that the charge as a whole fully and fairly presents the law applicable to the issues.

Plaintiff brought this action, in the district court for Winona county, in July, 1885, to recover for personal injuries received by her, as alleged, February 10, 1884, while a passenger on defendant's railway. The defendant-pleaded, among other defences, a release, under seal, of this and all other causes of action against defendant, executed by plaintiff July 24, 1885, in consideration of $225 then paid her by defendant. In her reply the plaintiff admitted executing the release, but alleged that it was obtained from her by defendant's agent by fraudulent representations to the effect that her attorneys, in whose hands she had placed her claim, had not mentioned it to defendant or its agents, were giving it no attention, and would not prosecute it, and thought it of not merit enough to be worth prosecuting; that the physician whom she had employed immediately after her injury had said to such agent of defendant that her injuries would soon be cured with proper treatment; and that one Wasem, in whose house plaintiff lived immediately after her injury, and who had acted as her adviser in regard to the claim, had told such agent of defendant that it would be best if he should see plaintiff and settle the matter. And she further alleges that on discovering the falsity of the statements, she rescinded the release and tendered the $225 to defendant, etc.

After the decision of the former appeal, (36 Minn. 399,) the action was retried before *Start*, J., and a jury.

The negligence of defendant, alleged in the complaint and litigated at the trial, consisted in stopping the train on its arrival at plaintiff's destination in such manner that the car in which the plaintiff was a passenger was not opposite the station or platform, so that when plaintiff, by invitation and direction of defendant's servants, alighted from the car and made her way to the station, along the track, she slipped between the ties over a cattle-guard or culvert, "and was thrown forcibly upon her side and back against the rail and was grievously hurt."

The questions put to Dr. Staples, one of plaintiff's witnesses, against defendant's objection and exception, and which form the subject of the defendant's 6th and 7th assignments of error, were as follows:

"Q. Now, doctor, if a woman should fall into a railroad culvert, one leg going down up to her hip or waist, and the other being over

the ties, and the knees striking her cheek; and if the fall should be backward, so that she struck on the tie or rail with her back and side; and if she should have, after that fall, such spells or fits as you have heard Mrs. Amos describe; and if she never had any such before the fall,—to what, doctor, are those spells or fits to be attributed?"

"Q. Now, doctor, if Mrs. Peterson had these spells or fits, such as Mrs. Amos describes, up to January, 1886, some hard and others light, and with varying frequency, and, since January, 1886, has had no times of unconsciousness, but has had the symptoms of fits or spells not resulting in unconsciousness; and if last year she had these symptoms once in two or three months, and this year more often, and lately once or twice a month, and that her general health is still bad and her strength small,—what, in your judgment, is the probability of her recovery?"

The 5th error assigned is that the court, at the plaintiff's request, gave the jury the following instruction:

"You understand, gentlemen, in regard to this matter of whether a release was obtained by fraud turns upon the question of the alleged fraudulent representation in regard to the opinion of Dr. Clark. To justify holding the release invalid on account of fraud, you understand she must have believed the misrepresentation, and it must have been the inducing cause for her action. Although she may have had some doubts in her own mind as to whether she could recover or not, if she actually believed and relied upon the alleged representation of Dr. Clark that she would get well, and if such belief was the inducing cause of her signing the release, it would be ground for avoiding the release, providing she actually believed the alleged representation and it was the inducing cause for her signing the release."

Plaintiff had a verdict of $3,000, and the defendant appeals from an order refusing a new trial.

*Wm. Gale,* for appellant.

*Wilson & Bowers,* for respondent.

MITCHELL, J. This case was here on a former appeal, 36 Minn. 399, (31 N. W. Rep. 515.) The second trial was conducted substantially on the lines indicated in the opinion of this court at that time. Defendant's first, second, third, and fourth assignments of error all raise the same question, viz., that the verdict was not justified by the evidence, particularly on the issue as to the release exe-

cuted by plaintiff. The evidence on that point is substantially the same as on the first trial, and we think now, as we thought then, that all the questions involved in that issue were, under the evidence, questions for the jury.

Defendant especially urges that plaintiff's own testimony shows (1) that in making the settlement, she did not rely on the alleged false representation of plaintiff's agent, and (2) that she had ascertained its falsity before she accepted the money from defendant. Some detached parts of plaintiff's testimony, taken by themselves, would seem to support the first of these propositions; but, taking the whole of it together, we think it is fairly and reasonably susceptible of the construction that, although her own opinion had been that she would never fully recover from her injuries, and that, notwithstanding the alleged opinion of her physician, she still had doubts about it, yet, in view of his supposed superior knowledge of her case, she so far relied upon his opinion, and was so far influenced by it, that it was the inducing cause of her signing the release.

We find nothing in the evidence that would have required the jury to find that she knew of the falsity of this representation before she accepted the money. It does not appear that the letter she received from her attorney contained anything except that a suit had been commenced on her claim against the defendant. She was not bound to assume, because the agent had made an incorrect statement as to that matter, that his statement as to what Dr. Clark had said was also untrue, and she was not, as a matter of law, chargeable with imputed knowledge that the one was false, because she had ascertained that the other was. Indeed, she might have supposed that the agent was simply honestly mistaken as to the commencement of the suit.

Defendant further contends that plaintiff could not have rescinded the release on the ground of false representations as to what Dr. Clark had stated, because she states that she did not know they were false until she heard the doctor testify on the first trial. We think this statement of hers may be fairly construed as meaning merely that she did not have certain knowledge of the fact until she obtained it directly from the doctor's testimony on that occasion. But it is not necessary that a party have positive knowledge of the falsity of a

representation before he has the right to rescind. This right depends on the existence of the fraud, and not upon the extent of the party's knowledge of it.

The sixth and seventh assignments of error, which are next in order although not in number, are that the court erred in allowing two hypothetical questions, assumed to be based upon evidence in the case, to be put to Dr. Staples, as an expert witness. The first objection to these questions, viz., that the witness had not heard all the evidence upon which the questions assumed to be based, is not sustained by the record. It does appear that he heard all of the testimony as to a certain fit or spell which plaintiff had, which was the sole subject of the questions so far as the doctor's personal knowledge of the evidence was concerned.

To the objection that Mrs. Amos, the witness whom the doctor heard, only saw one fit, and that the questions assumed that the others were like this one, it is enough to say there was at least some evidence that the others were of the same or similar character. In propounding hypothetical questions to medical experts, it is the privilege of counsel to assume any state of facts which there is evidence tending to prove, and to have the expert's opinion upon the facts assumed. Such facts are assumed only for the purposes of the question, and for no other. The opinion is that of the expert based on these facts, and if the facts are not found by the jury to be as counsel by his question assumes, then the opinion of the expert is entitled to no weight.

Another objection made to one of these questions, embodying a statement of plaintiff's assumed symptoms and condition, is that, instead of asking the witness whether in his opinion the plaintiff would recover, he was asked "what in your judgment is the *probability* of her recovery?" The point of the objection is that it called for an answer purely speculative in its character. While we have no disposition to extend the scope of this kind of evidence beyond the limits of established rules, yet we do not see that this question is obnoxious to the objection made. In view of the nature of the subject-matter of the inquiry, it amounted to nothing more than asking the witness his professional opinion whether she would recover. This was not an event the occurrence of which could be stated with abso-

lute certainty. It was wholly a question of probabilities, and all that any honest witness, however skilful, could say would be that recovery was either probable or improbable. Of course the distinction must be kept in mind between the admissibility of evidence tending to prove permanent injury, and the reasonable certainty of permanent injury which must be established by all the evidence in order to warrant the jury to award damages on that basis.

Had the question been put in the form suggested by counsel as the correct one, and had the witness answered, as he did in this case, that the probability was that she would never recover, it would hardly be claimed that the answer would be incompetent. And certainly the question need not be more positive than is required of the answer. See *Filer* v. *N. Y. Cent. R. Co.*, 49 N. Y. 42; *Matteson* v. *Same*, 62 Barb. 364; *Macer* v. *Third Ave. R. Co.*, 47 N. Y. Super. Ct. 461. The case of *Strohm* v. *N. Y. Lake Erie & Western R. Co.*, 96 N. Y. 305, cited by appellant, although perhaps an extreme case, and decided by a divided court, does not go so far as to exclude a question like this.

The fifth assignment of error is that the court erred in charging the jury, at plaintiff's request, at the close of the general charge, as contained in folios 520–521 of the paper book. This request to charge had reference exclusively to the degree or extent of plaintiff's reliance upon Dr. Clark's alleged statement necessary to entitle her to rescind the release. The objection made to this instruction is that it assumes and omits several material matters necessary to justify a rescission.

But it referred to only one matter, and as to that it stated the law correctly. It is not usually possible to state in any one instruction all the principles of law applicable to a case, or even all the limitations or restrictions to any particular one. This must frequently be presented in other and distinct portions of the charge. Hence, the whole charge must be considered together, and an omission to state the whole law of the case in one part, if the omission is fully supplied in others, does not constitute error. In this case, the whole charge of the court, considered together, and in connection with the particular instruction complained of, so fully and fairly presented the

whole law applicable to the issues that the jury could not have mis-apprehended it.

Order affirmed.