(Opinion published 56 N. W. Rep. 41.)

---

HENRY C. COOPER *vs.* ST. PAUL CITY RY. CO.

Argued June 16, 1893. Affirmed Aug. 1, 1893.

**Photographs as Evidence.**

On the trial of this action, which was brought to recover for personal injuries said to have been caused by defendant's negligence, a photograph taken a few days prior to the trial, and testified to be "a true and correct picture and representation of" certain parts of plaintiff's body, was received in evidence, under objection and exception. The photograph was not made a part of the record on appeal to this court. *Held*, that no error has been made to appear.

**Rulings on the Trial Approved.**

Various rulings of the trial court considered and disposed of.

**Damages not Excessive.**

> *Held,* that the verdict in plaintiff's favor was supported by the evidence, and that the damages awarded were not excessive.

Appeal by defendant, the St. Paul City Railway Company, from an order of the District Court of Ramsey County, *J. J. Egan,* J., made February 3, 1893, denying its motion for a new trial.

On October 6, 1891, the plaintiff, Henry C. Cooper, was a passenger from Merriam Park east to Marion Street in St. Paul upon the Interurban Electric Line along University Avenue. While he was alighting at Marion Street the car was started, and he fell and was injured. He was a bookkeeper in the employ of the Minnesota Transfer Company at a salary of $70 a month. The trial occurred November 10, 1892. Plaintiff had a verdict for $8,800.

*McCafferty & Noyes,* for appellant.

The court erred in overruling defendant's objection to the introduction and submission to the jury of a photograph of the plaintiff, taken at the suggestion of plaintiff's attorney, to be used upon the trial. It could have no other effect upon the minds of the jurors than to create a sympathy prejudical to defendant and could not aid them in arriving at a just determination of the issues involved. A photograph of the limb of a person might under some circumstances be admissible. The photograph used in the case at bar shows not only the limb, but the whole figure. The expression on the face is most forlorn and distressed. We submit that it was incompetent. The expression was assumed, and in so far as assumed it was not honest and was misleading. A man could not be as miserable as that man looks and live twenty-four hours. We did not intentionally injure this plaintiff. Then on what theory should his afflictions be painted in such cardinal colors? This action was not brought to recover vindictive damages. Compensation was all that was claimed, and yet everything that would appeal to passion or prejudice was submitted and received.

The defendant claims that the plaintiff's condition is one of progressive muscular atrophy, superinduced by the grippe, and Dr. Armstrong entertains that opinion. The plaintiff claims that the muscular atrophy was occasioned by *trauma* or injury, and there the matter rested, so far as the medical men were concerned. That

*trauma* might produce the result found no one denied, and we believe that no one denied but that grippe might also produce the result, but as to these questions of possibility we submit that they were improper, and not competent for any purpose and prejudicial to this defendant.

There is such an expression of contentment, such an air of fruition, such a halo of victory about a personal injury lawyer, when he has obtained a verdict, no matter how, that it is quite refreshing to see him. Juries are not infallible if they are invincible. They are not always just because generous. But robbing Peter to pay Paul is never commendable charity. In this court that kind of charity should be stayed.

*A. G. Briggs,* for respondent.

The photograph is a true representation of the respondent and of his limbs. Had it been possible for plaintiff to have appeared personally before the jury he could not have been excluded. Yet that is in substance the contention of defendant. It was important that the jury obtain a clear conception of the condition of plaintiff. Nothing could give a more accurate idea of his condition than the photograph which truly represents him. Highly colored and deeply shaded descriptions lie, unconsciously it may be, but photographs tell the truth. The photograph was competent and properly admitted. *Alberti* v. *New York, L. E. & W. R. Co.,* 118 N. Y. 77; *Reddin* v. *Gates,* 52 Iowa, 210; *Archer* v. *New York, N. H. & H. R. Co.,* 106 N. Y. 589; 31 Central Law Journal, 416; *State* v. *Holden,* 42 Minn. 350; *Blair* v. *Pelham,* 118 Mass. 420; *Church* v. *City of Milwaukee,* 31 Wis. 512.

COLLINS, J. This was an action to recover for injuries said to have been caused by one of defendant's motormen while plaintiff was a passenger upon one of its cars on the Interurban Line. The claim was that while plaintiff was alighting from the car at a proper stopping place, and in a prudent manner, the car was carelessly, suddenly, and negligently put in motion, thereby throwing him to the ground with great violence. The plaintiff recovered a verdict for the sum of $8,800, and this appeal is from an order denying defendant's motion for a new trial. A large number of assignments

of error are presented for consideration, many of which need not be specially mentioned, and several can be so grouped that they may be disposed of together.

1. It would seem to be conclusively shown from the testimony that plaintiff had been in good health for many years prior to the alleged accident, in October, 1891, and that immediately thereafter he was obliged to cease work, and to have medical treatment. He was not relieved by this treatment, and has gradually grown worse; his affliction being, if the medical experts are correct, an incurable disease of the spinal cord. This is a progressive disease, according to the testimony, and it was proper to show the condition of the plaintiff's health for some time prior to the day on which he stated that he was thrown to the ground. His counsel may have been overzealous when he proved the state of plaintiff's health at a somewhat remote period, but no harm could have resulted to the defendant from this.

2. The physician who attended the plaintiff from the time of the accident until the latter moved to Chicago—about one month—was called as a witness. He had heard the plaintiff's testimony as to the manner in which he was thrown to the ground, the kind of injuries inflicted, and his present bodily condition, and there was no error in the rulings of the court, under which the witness was permitted to answer questions in respect to the cause of plaintiff's condition while he was in attendance upon him, as well as at the time of the trial, and also to give an opinion as to the permanent or incurable nature of the disease,—all being based upon the assumption that plaintiff was a well man before the accident, and had told the truth about the way it occurred. The same may be said in reference to the testimony of Dr. Church, a specialist, of Chicago, who had visited the plaintiff in that city in consultation with his regular medical attendant. These questions all assumed a state of facts respecting which there had been evidence tending to prove the same, and counsel was entitled to have the opinions of medical experts, based upon the facts assumed, and relative to the subject of his inquiries. *Peterson* v. *Chicago, M. & St. P. Ry. Co.*, 38 Minn. 511, (39 N. W. Rep. 485.)

3. No question ought to be raised as to the competency of Dr. Briggs to testify as an expert in respect to the disease attributed

to be the result of the accident. He may not have had the experience acquired by a specialist on this particular ailment, but that only affected the value of his testimony.

4. The objections made by counsel for appellant to the questions put to Dr. Church as to plaintiff's statements in his presence, concerning his present pain and suffering, are disposed of by calling attention to *Jones* v. *Chicago, St. P., M. & O. Ry. Co.,* 43 Minn. 281, (45 N. W. Rep. 444;) *Johnson* v. *Northern Pac. R. Co.,* 47 Minn. 430, (50 N. W. Rep. 473.)

5. The question asked the witness Doyle by defendant's counsel, as to what happened when he (Doyle) reached Marion street, was certainly immaterial. It may have had some bearing on the case, but this was not made to appear. The court could not surmise that the witness saw the accident which was being inquired into, or that an answer to the question would have been his version of the manner in which it happened. The counsel did not go far enough with his inquiries to show that Doyle's testimony was pertinent to the case.

6. For some months prior to the trial the plaintiff had resided in Chicago, Ill., and his testimony was taken by deposition. It was claimed that his physical condition was such that he could not be present at the trial. Against the objections of defendant's counsel, a photograph, which, according to the testimony, had been taken a few days before the trial, and was "a true and correct picture and representation of those parts of Mr. Cooper's body that it purports to show," was received in evidence. This ruling is specified as error. We are assured by counsel, in their brief, that the expression upon the face of a lost soul, as portrayed by the combined imaginations of Dore and Dante, would be extremely jovial in comparison with that depicted upon plaintiff's face in this work of art. We are not prepared to disagree with counsel in this contention, or their further claim that the expression upon a man's face may be easily changed or distorted, and rendered very misleading, when brought before a camera. But the portrait in question has not been forwarded on this appeal, and we have no means of knowing whether it purported to represent anything more than those parts of plaintiff's body which could not have been affected by temporary

effort or exertion, or, if the whole figure did appear, that the facial expression was of the hideous character so graphically described by the able counsel for defendant, and could have had the effect upon the jury they insist it had. In *Alberti* v. *New York, L. E. & W. R. Co.*, 118 N. Y. 77, (23 N. E. Rep. 35,) it was held that a photograph of a plaintiff—his physician testifying that it was taken in his presence, and correctly represented the plaintiff's limbs—was properly admitted in evidence for the purpose of showing the manner in which these limbs were contracted, as the result of alleged injuries. It was said to be competent on the same principle as a map or diagram. We believe this to be a correct rule, and it has not been shown here that the court below was not strictly within it when making the ruling complained of. See, on the general subject, an article in 31 Cent. Law J. 416.

7. We have examined with care the charge of the court to the jury, and find that it was full and complete. All of the defendant's requests to charge, which were pertinent to the facts, were embraced therein. There could have been no misunderstanding on the part of the jury as to the issues, and that it was incumbent upon the plaintiff to show, by a preponderance of evidence, that the defendant's servant, carelessly and negligently, started the car, and that plaintiff did not contribute to the result by his own negligence. If the plaintiff's statement of the manner in which the accident happened was believed by the jurors,—and they had the right to believe him,—they might easily conclude, as they evidently did, that the carelessness and negligence of the motoneer was established, and that there was an utter absence of testimony tending to indicate that plaintiff contributed thereto. The admitted fact that plaintiff started for the platform step before the car stopped, and stood there, ready to promptly alight when it should come to a standstill, even if it should be admitted that these were acts of carelessness and negligence, had nothing whatever to do with the accident, as counsel seems to argue, for, according to plaintiff's testimony, he remained upon the step, safe and uninjured, until the car came to a full halt. He was not injured in going to, or while standing on, the platform or step, but while getting down from the latter. We cannot say that the evidence was insufficient

to justify a verdict in plaintiff's favor without stamping his version of the occurrence as unworthy of belief, and we see nothing in the case which leads us to even suspect it to be of such character.

8. But one of the remaining specifications of error needs to be specially mentioned. It is said that the damages awarded are excessive. The plaintiff, when injured, was about 58 years of age, a bookkeeper by occupation, constantly employed, and earning $70 per month. He has been unable to work since the accident, has suffered great pain, and has steadily been under medical treatment. From a man in good health, he has become very emaciated, and at the time of the trial had been bedridden for several months. The evidence is conclusive that the disease is incurable, progressing slowly, and ultimately causing death, although he may live for years in this most deplorable condition of mind and body. Under these circumstances, we are not justified in pronouncing the verdict ex cessive. The amount awarded cannot be so regarded, when compared with the verdicts rendered and upheld in *Hall* v. *Chicago, B. & N. R. Co.*, 46 Minn. 439, (49 N. W. Rep. 239,) and *Bishop* v. *St. Paul City Ry. Co.*, 48 Minn. 26, (50 N. W. Rep. 927.)

Order affirmed.

(Opinion published 56 N. W. Rep. 42.)