ANNIE E. DONNELLY v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 2, 1897.

Nos. 10,838—(93).

**Personal Injury—Ailments Caused by Accident—Evidence.**

> *Held*, that the verdict was justified by the evidence, and that it was not excessive.

**Same—Opinion of Medical Expert—Temperature of Patient.**

> When the issue is whether the present bodily ailments of a party were caused by certain injuries, a medical expert may give an opinion as to the cause of such bodily ailments, founded upon a statement of the nature of the injury, the subsequent symptoms of the party and his present physical condition, as testified to by others.

Action in the district court for Ramsey county to recover $25,500 for personal injuries suffered by plaintiff. From an order, Kelly, J., denying a motion to enter judgment for defendant notwithstanding a verdict for $2,500 in favor of plaintiff, or for a new trial, defendant appealed. Affirmed.

The second assignment of error was that the court erred in overruling appellant's objection and exception to the following hypothetical question:

"Q. Now, supposing, Doctor, on the evening of the 18th of May Mrs. Donnelly, who at that time was in good health, was in the street car that ran off the track with sufficient violence, at any rate, to run up against the bank upon the other side and throw her from a standing posture back upon the seat—upon the back of the seat, so that her back and side struck upon the back of the seat;—that she got off the car and attempted to walk home, and walked about a half block and found that she couldn't, and then waited for the car and rode to Western avenue, and got off the car at Western avenue and went to her house, a block and a half away. During the night she was seized with a hemorrhage, and in the morning was in the condition that you have heard Dr. Kelly describe here. Those hemorrhages continued from that time to this, being about forty in all, the last one being last Saturday and the one previous to that being about a week previous; the longest time elapsing between

[1] Reported in 73 N. W. 157.

any of these hemorrhages being two weeks.    What would you say, in your opinion, was the cause of her condition?"

*Munn & Thygeson,* for appellant.
*Stevens, O'Brien, Cole & Albrecht,* for respondent.

MITCHELL, J.

This action was brought to recover damages for personal injuries resulting from the derailment of a car on defendant's Grand avenue line, on which plaintiff was a passenger.    The accident is alleged to have been caused by the negligent failure of the defendant to maintain its road in proper condition, and by its running the car at an unsafe rate of speed over the rough and otherwise defective track. There was, in fact, no dispute as to the negligence of the defendant.

The main contention of defendant on the trial was that the plaintiff did not sustain any such serious injuries as she claimed, and that the ailments from which she subsequently suffered were not the result of any injury which she received at the time of the accident.

The contention of the plaintiff was that when the car left the track she rose in her seat and assumed a standing position; that when the car came to a full stop the sudden shock threw her against the seat, which struck her back just below the shoulder blade; that the effect of this was to break her ninth rib, which penetrated the pleural cavity and entered the tissue of the lung, which resulted in frequent hemorrhages and ultimately in sepsis or blood poisoning; or, if the rib did not penetrate the lung, the sudden blow when she struck the car seat caused a similar injury to the tissue of the lung which produced these results.    On the other hand, the defendant contended that the plaintiff did not rise in her seat when the car was derailed and could not have received any such injuries while sitting; that the hemorrhages and disease of her lung were the result of tuberculosis or consumption, for which the accident was in no way responsible.

The injury, if any, to the lung not being the subject of ocular inspection, its nature and extent were necessarily somewhat a matter of opinion.    The medical expert evidence was conflicting, as usual.    But the fact remains that, according to the undisputed evidence, the plaintiff was a perfectly healthy woman up to the time of

the accident; that hemorrhages and severe internal pains ensued almost immediately, followed by a diseased condition of the lung. The evidence was ample to justify the jury in finding that all these things were the proximate results of an injury which she received at the time of the accident; and, if so, then, in view of their very serious nature, it could not be successfully contended that a verdict of $2,500 was excessive.

2. The second assignment of error relates to the admission of a hypothetical question propounded to a medical expert, calling for his opinion as to the cause of plaintiff's condition, based upon the evidence as to (among other things) the manner in which she was injured, the kind of injuries inflicted, her subsequent symptoms and present bodily condition. The objection urged to this question is, not that it included, as a basis for the opinion called for, elements which were not proper subjects of expert testimony,—as, for example, the weight to be given to certain circumstantial evidence,— but merely that the opinion called for, to wit, the cause of the plaintiff's condition, was itself not the subject of expert evidence, being the very question which the jury was to pass upon.

Therefore the only question which we have to decide is whether, under the circumstances, the cause of plaintiff's condition was the subject of expert evidence, assuming that the hypothetical question embodied a proper basis for an opinion on the subject.

It is laid down in the books that a question to an expert witness should not be so framed as to invade the province of the jury; but the line of cleavage between what does and what does not invade the province of the jury is not capable of definite location by any exact rule applicable to all cases, without regard to the subject of inquiry. The mere fact that the opinion called for covers the very issue which the jury will have to pass upon is not conclusive that it is not the proper subject of expert or opinion evidence. For example, sanity or insanity is the subject of expert testimony, although that may be the sole issue to be determined by the jury. Neither do we appreciate the fine distinctions sometimes sought to be drawn between asking an expert whether, in his opinion, certain causes might produce certain results, and asking him whether, in his opinion, they did produce such results.

It is well settled that the opinions of medical experts as to the cause of death are admissible, such opinions being founded either upon the personal knowledge of the facts of the case, or upon a statement of the nature of the injury or symptoms and nature of the disease, as testified to by others. Rogers, Exp. Test. § 49, and cases cited. There can be no difference in principle between an opinion as to the cause of death and one as to the cause of physical ailments which have not resulted in death.

This court has held that in answering a hypothetical question embodying a person's assumed symptoms and conditions, as testified to by others, a medical expert may give his opinion as to the probability of recovery (Peterson v. Chicago, 38 Minn. 511, 39 N. W. 485); also that a physician who has heard the testimony as to the manner in which the plaintiff was injured, the kind of injuries inflicted and his present bodily condition, may give an opinion, based on that evidence, as to the cause of plaintiff's condition (Cooper v. St. Paul, 54 Minn. 379, 56 N. W. 42. This case is directly in point). Counsel for the defendant relies on what was said in Briggs v. Minneapolis, 52 Minn. 36, 53 N. W. 1019, as supporting his contention. In that case there was no dispute but that the deceased died of heart disease; that he had been subject to frequent attacks of this disease (which was progressive) for 18 years; that he was liable to die in any of these attacks; and that he was taken with one before the conductor ever touched him.

Owing to disapproval of the frequent practice of so-called "medical experts" giving opinions which must necessarily be mere matters of conjecture or speculation, and under a feeling of impatience with the idea that any one would be bold enough, under the circumstances, to give an opinion that the immediate cause of death was the act of the conductor in removing the deceased from the car, the writer of the opinion in that case probably used language which is too broad as a general proposition of law unless qualified or limited.

3. The only other assignment of error worthy of special notice is the fourth, which relates to the refusal of the court to strike out the answer of the same expert as to the permanency and severity of the plaintiff's injuries, for the reason that it appeared from other

parts of his testimony that his answer was based in part on hearsay evidence, viz. the statement of the plaintiff to him out of court as to her persistent high temperature. There are two sufficient reasons why the court was right in refusing to strike out the answer: First, a similar answer to the same question had been stricken out, because it was supposed that it was in part based on hearsay, and the question was then repeated to which the witness gave the answer under consideration, stating that, in giving it, he confined himself to the facts contained in the question, which did not include the element of persistent high temperature; second, competent evidence had been introduced on the trial tending to prove the fact of plaintiff's persistent high temperature, and therefore its assumed existence was a proper element to be taken into account in forming the opinion which the witness was called upon to give. The fact that it was not incorporated in the hypothetical question propounded to him is not material.

Order affirmed.