OLIVE M. SKELTON v. ST. PAUL CITY RAILWAY COMPANY.[1]

January 9, 1903.

Nos. 13,127—(156).

**Street Railway—Sudden Start.**

Where a street car stops for passengers to alight, and the servants in charge invite them to leave, such servants have no right to jerk or move the car while such invitation is being acted upon, and it is negligence to do so.

**Testimony of Physician.**

It is proper to allow a physician to give the result of information derived by him in the treatment of a patient, when being examined as an expert.

**Verdict Excessive.**

A verdict of $4,000 *held* to be excessive, and reduced to $2,500.

Action in the district court for Ramsey county to recover $10,600 for personal injuries received by plaintiff while a passenger on defendant's street car. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $4,000.

[1] Reported in 92 N. W. 960.

From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed on conditions.

*Munn & Thygeson*, for appellant.

*Howard Wheeler* and *Ambrose Tighe*, for respondent.

LOVELY, J.

Action for injuries sustained by plaintiff through the alleged negligent starting of a street car on which she was a passenger. At the close of the evidence, defendant requested a direction in its favor, which was refused. Plaintiff had a verdict. Defendant moved for judgment, or a new trial in the alternative, which was denied. This appeal is from that order.

In support of the verdict, we are required to adopt the following facts, which are amply supported by the evidence: On the afternoon of August 30, of last year, plaintiff took passage upon one of defendant's street cars, over the State and Concord line, in St. Paul, to go from the East to the West side. At a point between Morrison and Wood streets there is a bridge, beyond which the street cars run for some distance on Concord street. Beneath this are the tracks of the Chicago Great Western Railway; the bridge practically forming a part of the highway over which the street car tracks are laid, and on which its cars usually run. At the time in question the bridge was being repaired, so that defendant had, for a time, to suspend operating its cars thereon, and transferred passengers to cars going further. This required the defendant to treat the place of transfer temporarily as the end of the line. It provided a cross-over switch from the north to the south track, upon which it moved its cars, when this point was reached, from the north to the south track, and then sent the arriving car back on its return trip.

The car on which plaintiff took passage was an open one, for summer use, having gates which opened at each end. The conductor was in charge at the rear, and a motorman operated the electric power in front according to its direction at the time. Plaintiff, on entering, placed a satchel, which she carried, on the rear platform. She then went forward and took a seat. There

88 M.—13

were six passengers besides herself. At the time the car reached the bridge at or near the place of transfer, it stopped, when the conductor said: .

"This is as far as the car goes. * * * Transfer to the other side."

The rear gates were thrown open, and the passengers proceeded to alight from the car. Plaintiff arose from her seat, and, with reasonable expedition, passed to the rear, on her way out. Coming to her satchel, she stooped to pick it up. At this instant there was a violent movement of the car, which impelled her forward. This was immediately followed by another jerk, which threw her with considerable force upon her left knee. She was helped up, got off the car, then went to the place of transfer on the other side of the bridge, and was able to proceed, with some difficulty, to the end of her journey. She returned home that same evening. The testimony shows that the pain increased in severity until four days thereafter, when she was obliged to call a physician, and has been under constant medical treatment for her injuries ever since.

There was a conflict as to whether the car was at a standstill at the same time plaintiff was thrown upon the floor; it being claimed by defendant that plaintiff's fall occurred while it was moving over the switch, and before it had stopped for passengers to alight. But we think the weight of evidence sustains the plaintiff's claims in this respect. At all events, it was a question for the jury whether her version was true, and we are required, for the purpose of this review, to adopt the facts above stated.

The defendant asked an instruction to the effect that, as to one safely on board a street car, it is not negligence to start such car in a careful and prudent manner, although a greater or less jerk may accompany such a movement. This request was refused. Conceding that it is a matter of common knowledge that some jerking necessarily accompanies the starting of street cars propelled by electricity, according to defendant's claim, the instruction refused was not applicable to the issues involved, nor the evidence, at the trial.

Plaintiff rested her right to recover upon the claim that she was

a passenger on defendant's line of street cars; that defendant stopped at a designated point, where she and other passengers were to be transferred; that she was invited to alight to make such change, and while doing so the car was suddenly started, contrary to warning, whereby she was thrown down and injured. In view of defendant's contention that the car was on the switch and had not stopped when plaintiff fell, the court specifically instructed the jury that, if plaintiff was thrown down while the car was moving over the switch, she could not recover, but that if the jury believed the defendant's conductor gave an invitation to passengers to alight; that the car stopped still and the gates were opened while they passed out; that plaintiff arose, stepped into the aisle, and picked up her satchel, preparatory to leaving the car, which was then suddenly and violently jerked, whereby she was injured, without her negligence, and because of the negligence of defendant,—she might recover. In this way the opposite theories of the respective parties were intelligently presented and concretely stated by the trial court, and whether or not electric cars can be run without jerking became, so far as this case is concerned, a mere abstract question; and no just criticism can be made of the course pursued by the trial court in its instructions in the respect stated, for we are not able to find fault with the legal proposition that a street car carrier, when it stops its cars for passengers to get off, and invites them to do so, has no right to start the car until they have had a reasonable opportunity to act upon such invitation. This is too plain to admit of discussion.

A physician who was attending plaintiff during her illness was permitted to state, in describing her symptoms, that she had suffered from headaches. The record shows that such knowledge was derived from information received from plaintiff during the course of professional treatment, which was obviously necessary to enable the medical attendant to prescribe for his patient. Brusch v. St. Paul City Ry. Co., 52 Minn. 512, 55 N. W. 57. The same physician also testified as to the probable continuance of plaintiff's malady, and expressed his opinion on the question whether the injured limb would ever regain its normal condition. This was after he had given a somewhat extended clinical history of her

treatment, and was based upon the information he had derived during the course of his professional attendance. This was proper. The opinions of a professional expert in such matters are not required to be based upon hypothetical questions embodying a description of the physical condition of a person, but may be formed upon knowledge of the injuries, derived at the bedside, or from evidence in court. Jones v. Chicago, St. P., M. & O. Ry. Co., 43 Minn. 279, 45 N. W. 44; Johnson v. Northern Pac. R. Co., 47 Minn. 430, 50 N. W. 473; Cooper v. St. Paul City Ry. Co., 54 Minn. 379, 56 N. W. 42.

The only remaining question we deem it our duty to notice is the claim that the verdict was too large. The jury awarded $4,000. We are not entirely agreed upon the proper manner of dealing with this assignment, but a majority of the court are of the opinion that anything in excess of $2,500 would be excessive. It is therefore ordered that a new trial be granted unless the plaintiff, within ten days after the filing of the remittitur, shall file her consent that the verdict be reduced to $2,500, in which case the order appealed from is affirmed.