MARCELLA AHERN v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

December 6, 1907.

Nos. 15,320—(97).

**Passenger Alighting from Car—Evidence.**

Action to recover damages for injuries sustained by the plaintiff, as she claims, by the starting of the defendant's car while she was leaving it. Verdict for plaintiff. *Held*, that the evidence is sufficient to sustain the verdict, and that the rulings and instructions of the trial court as to the question whether the plaintiff was a passenger on the car were correct.

**Medical Opinion Admissible.**

A medical expert, who has heard the testimony relevant thereto, may give an opinion, based upon the assumption that the testimony is true, as to the cause of the present physical condition of a party.

**Opinion Evidence.**

Opinion evidence, as to the effect of the pendency of the suit or the recovery of a verdict upon a plaintiff in a personal injury case who is suffering from neurasthenia, is not admissible.

Action in the district court for Hennepin county to recover $10,-000 damages for personal injuries. The case was tried before Brooks,

1 Reported in 113 N. W. 1019.

J., and a jury which returned a verdict in favor of plaintiff for $3,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.    Affirmed.

*Jno. W. Arctander* and *Munn & Thygeson,* for appellant.

*S. R. Child* and *Benj. Drake,* for respondent.

START, C. J.

On September 6, 1905, the plaintiff, as she claims, sustained personal injuries while she was in the act of alighting, as a passenger, from one of the defendant's electric cars.    She brought this action on October 5, 1906, to recover damages for her injuries on the ground, as alleged in her complaint, that they were caused by the negligence of the defendant in starting the car and closing the gates before she was off the car, whereby she was thrown with great force to the ground and seriously injured.    The answer put in issue the allegations of the complaint.    The plaintiff had a verdict for $3,000, and the defendant appealed from an order denying its motion for judgment or a new trial.

The first contention of the defendant is that upon the undisputed evidence the defendant, as a matter of law, was entitled to a directed verdict in its favor.    The merits of this claim depend largely upon whether the plaintiff was a passenger at the time she fell from the car.    This question was submitted to the jury by the trial court, and under its instructions the jury must have found that the plaintiff was a passenger.    Is this finding sustained by the evidence?    The defendant claims that it is not, and, further, that the trial court erred in its rulings as to the admission of evidence and in its instructions with reference to this question.

The evidence tends to show that the plaintiff, on the evening of the day the accident occurred, at about dusk, was standing on the easterly side of Emerson avenue, in Minneapolis, across which the defendant's car line ran; that she was waiting for an easterly bound car to take her down town, when a car approached, slowed down as it neared the crossing, and when it was about fifteen feet east thereof it came to a stop and the motorman opened the gates to take on passengers; and, further, that the plaintiff and another waiting pas-

senger boarded the car. The conductor testified that he saw them coming towards the car, and he supposed that they wanted to take the car. The motorman testified that he opened the gates to take on passengers. The conductor and motorman each testified that on the trip they discovered that the air brake of the car was broken, and the sign "Not in Service" was turned up and was plainly visible at the time the car reached the crossing. The plaintiff testified that she did not see the sign, and there was no evidence that she did, except the fact that it was displayed. In this connection defendant urges that it was error for the court to sustain plaintiff's objection to the defendant's offer to show by the motorman that: He did it [opened the gates] wholly involuntarily, simply as a matter of habit, without in any way intending to invite any one as a passenger upon this disabled car. The ruling was correct, for the intention of the motorman and his supposed involuntary act, of which the plaintiff was not advised, could not affect her rights.

The court instructed the jury fully as to what would constitute the plaintiff a passenger on the car, and to the effect that if, in what the motorman and conductor did and failed to do in stopping the car and opening the gates, she had reason to believe that the car at that time was intended to carry passengers, and, so believing, she in good faith boarded the car, she was, for the purposes of this case, a passenger on the car, and continued to be until she was given a reasonable time and opportunity to leave it in safety; and, further, if she saw the sign "Not in Service" on the car, still, in view of all the evidence, it was a question for the jury whether or not she had good reason to believe and did believe in good faith that the car carried passengers. The defendant excepted to these instructions, and to the refusal of the court to give certain requested instructions as to the question whether the plaintiff was a passenger, which were not in harmony with the instructions given. The defendant here urges that the court erred in giving the instructions and in refusing those which it requested.

We are of the opinion that the court did not so err, for the instructions as given were a correct statement of the law and applicable to this case. We are also of the opinion that the evidence was sufficient

to sustain the finding of the jury that the plaintiff was a passenger on the car.

The question, then, is, was the defendant entitled to a directed verdict, as a matter of strict legal right, in view of the fact that the plaintiff was entitled to the rights of a passenger until she was off the car? The testimony of the plaintiff tended to show that the car came to a stop, the gates opened, and she got on the car; that when she was in the door of the car, and about to go forward into the car, having in her hands a picture, her parasol, and purse, the conductor called to her, "This car takes no passengers," and repeated it, from which she understood that he intended that she should get off, which she started to do; that when she was on the bottom step of the car, and in the act of stepping to the ground, the car started forward, the gates began to close, and she was thrown to the ground, and that this was the last she knew until she regained consciousness, when she found herself on her back on the ground, and that she was seriously injured by the fall. A lady friend of the plaintiff, who saw her take the car, testified to the effect that the car came to a stop, the gates opened and the plaintiff got onto it, and that it was not then moving. The conductor testified, in effect, that when the plaintiff boarded the car it was still moving just a trifle, and when he told her that the car did not take passengers he meant that she was to get off, and when he said it she turned around and walked off—got off. When she did so the car had not come to a standstill. It was moving just a little. It was moving all the time. He further testified that he knew the car was moving and that she was going to get off, but that she did not give him time to say, "Wait until the car stops." The cross-examination of the plaintiff was adroit and subtle, and some of her answers to questions of counsel were confused and contradictory, and tended in some material particulars to modify her testimony in chief. Her cross-examination, and the assumed fact that the car was moving when she attempted to get off the car, is the basis of an earnest claim by defendant's counsel that the plaintiff's testimony is utterly unreliable, inherently improbable, affords no basis for a finding of negligence on the part of defendant, and conclusively shows that her own negligence was the sole cause of her alleged injuries.

Particular stress is laid upon the assumed fact that the car was in motion when the plaintiff attempted to get off, and that she walked out of the car against the motion thereof without taking hold of the hand rail. The plaintiff admitted that she did not take hold of the rail, as she had packages in her hands, but testified that the car was not in motion, either when she boarded it or when she attempted to alight; and in this she is corroborated by the testimony of her friend and by what the motoneer and conductor did and failed to do. It is an admitted fact that the gates were opened by the motoneer when the car reached the waiting passengers. Do motoneers open the gates for passengers when their car is moving? Again, the conductor knew that the plaintiff, in response to his remark to her, turned round and walked off the car. He saw her in the act of getting off. He knew that she was doing so in obedience to his implied order, and yet his only excuse for not warning her, and telling her not to get off when the car was moving "just a little," is that she did not give him time to do so. Verily, she must have been swift of foot or he slow of tongue. Are conductors accustomed to order passengers from their car when it is moving? If the car was not moving at the time she attempted to get off, then the plaintiff did not walk off the car when in motion, or against its motion. It was not until she was on the bottom step of the car that it started up and the gates began to close, if her testimony be true; and of this the jury were the judges. There can be no fair doubt from the evidence that the plaintiff fell or was thrown from the car steps to the ground, and was rendered thereby unconscious for a brief time. If her fall was the proximate result of the starting of the car, whether with a jerk or otherwise, while she was in the act of getting off the car, the defendant was guilty of negligence; for it had no right to start the car at all until she had a reasonable opportunity to alight in safety. Whether the car started with a jerk or not was material on the question whether the starting of it was the cause of the plaintiff's fall; but it is not conclusive. A careful consideration of the entire evidence, treating it as a whole, has led us to the conclusion that the question of the defendant's negligence and the plaintiff's contributory negligence were made by the evidence questions of fact, and we accordingly hold that

the defendant was not entitled to an instructed verdict, and that the verdict is sustained by the evidence.

The defendant urges several alleged errors in the admission of evidence which it insists entitles it to a new trial. Medical experts called by the plaintiff were permitted, over objection, to give an opinion as to the cause of her physical condition, based upon the assumption that the testimony given on the trial was true. This is urged as error, as an invasion of the province of the jury. The question thus raised is not an open one in this state, for this court has repeatedly held that such opinion evidence is admissible. We adhere to the rule. Cooper v. St. Paul City Ry. Co., 54 Minn. 379, 56 N. W. 42; Donnelly v. St. Paul City Ry. Co., 70 Minn. 278, 73 N. W. 157; Joyce v. St. Paul City Ry. Co., 70 Minn. 339, 73 N. W. 158; Decker v. Chicago, M. & St. P. Ry. Co., supra, p. 99, 112 N. W. 901.

The defendant asked one or more of the medical experts the following questions: "Q. And is it not a fact, is it not generally conceded in your profession, doctor, that in cases where parties suffer from that disease [neurasthenia], where they have a claim, that when the claim is settled, or the lawsuit determined, that then when the cause, to wit, the worry, ceases, that then, also the repair comes of the disease?" "Q. Do or do not the gentlemen of your profession as a general thing, or at all, undertake to cure or heal or treat neurasthenia, while the cause, while the worry, the object of the worry, is still existing?" The plaintiff objected to the questions on the ground that they were incompetent, immaterial, and no foundation laid. The court sustained the objections. There was evidence tending to show that the plaintiff was suffering from neurasthenia. The rulings are urged as error only in these words: "Assignments eleven and fifteen raise the question whether it should not be proper in a suit of this kind, where neurasthenia is claimed to exist, to show the effect of the existence and pendency of a lawsuit on the prognosis of the disease, so that the jury may take into consideration how much of the trouble is liable to disappear or become ameliorated upon the termination of the suit. It seems to me this should be allowed."

We assume that these are the best reasons that can be urged in favor of the admissibility of the proposed evidence. The defendant's

counsel did not in any manner advise the court what he proposed to prove by the questions, and it is not apparent on their face. But, even if it be conceded that the purpose was to show that the necessary effect upon a person suffering from neurasthenia of the pendency of a lawsuit to recover damages for the injuries which caused the disease would be to aggravate it, we are nevertheless of the opinion that the exclusion of evidence of this kind is not error of which the defendant can complain. It is quite clear that if a party is injured by the neglect of another, and it is necessary to begin and maintain a suit to recover damages for the injury, and the pendency of the action aggravates the consequences of the injury, the aggravation is not due to any neglect or misconduct of the plaintiff, but that it is an incident to the prosecution of his remedy, which is made necessary by the defendant's refusal to settle the case without suit. If either party could claim anything on account of such aggravation, it would be the plaintiff; but it cannot avail either party. While it is true that worry aggravates the condition of a person suffering from a disease of the nerves, and that joy favorably affects it, yet an inquiry as to just how much the trial of a personal injury action aggravates the plaintiff's condition, or how much a liberal verdict would mitigate it, in our opinion, involves too much doubt and uncertainty for the practical administration of justice. See, however, Robinson v. Spokane (Wash.) 91 Pac. 972, cited by defendant. We hold that the trial court correctly sustained the objections to the defendant's questions.

Other assignments of error are urged as a ground for a new trial; but we have considered them, and find no reversible error therein.

Order affirmed.