Argued June 5, affirmed September 6, 1957

GUM, ADMINISTRATOR *v.* WOOGE ET AL

315 P. 2d 119

*Francis E. Marsh* argued the cause for appellants. On the brief were Marsh, Marsh & Dashney, McMinnville.

*Carrell F. Bradley* argued the cause for respondent. On the brief were Bush & Bradley, Hillsboro.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the three defendants from a judgment in the sum of $20,000 which the circuit court entered in favor of the plaintiff, Stewart Gum, administrator of the estate of Gordon Ritchey Byerly, deceased. The judgment, which was based upon the verdict of a jury, was awarded for the benefit of the deceased's widow and minor children. Two of the defendants, E. T. Cone and Verna M. Cone, were partners engaged in business under the firm name of Cone Logging Company. The third defendant, G. W. Wooge, was their employee. The deceased, Gordon Ritchey Byerly, was engaged in the logging business. November 26, 1954, at 10:30 a. m., Byerly was driving his motor logging truck, loaded with small logs, westerly upon a public thoroughfare known as Lowell Market Road and at the same time the defendant, Wooge, on behalf of his employers, the Cones, was operating their unloaded motor logging truck easterly upon the same road. The two vehicles collided upon the north half of the pavement. Byerly was mortally injured in the collision and died a few minutes later. The road was straight for a distance of 900 feet at the place of

impact. The complaint submitted charges of speed, failure to maintain a lookout and the operation by Wooge of the defendants' truck "on the left, or wrong side of said highway." The defendants' (appellants') brief, in referring to "the problem of who was on the wrong side of the road," terms it "the controlling issue of this case."

■ The first assignment of error follows:

"The Court erred in failing to sustain objections to plaintiff's Exhibits D, J, K and L."

The four instruments are photographs which show among other facts the position of the front of the two trucks when they came to rest and before anyone had moved either of them. The plaintiff claims that the four photographs were material to the issues of the case, and argues that they showed the position of the two trucks and afforded a basis for an impression of the great force with which they collided. The defendants, in effect, ·concede that the four photos bear upon material issues, for their brief says:

"If the other photographs had not been available, then Exhibits D, J, K and L would probably have been entitled to admission."

The objection which was made to the four photos and some others when the group was offered for admission follows:

"I haven't any objection to the exhibits with the exceptions of D, L, K and J, and I think if the Court would examine those exhibits I believe that you would see the reason I think they might be prejudicial."

Defendants argue that since Byerly's body was still in his truck when the four photos were taken, and since that fact is revealed by the photographs, the latter

were gruesome. The four photographs disclose among others facts the extensive damage to the cabs of both trucks and the position of the defendants' vehicle with relation to the north shoulder of the road. Exhibit D, which shows principally the crunched wreckage of the two trucks, together with a mass of logs which apparently moved forward when the trucks collided, also shows the decedent's body pinned in the wreckage. The body appears to be in a reclining position and the photograph gives the impression that the logs, in moving forward, pushed Byerly against and partially into the defendants' cab. Exhibit J, due to the shadows produced by the logs and wreckage, shows virtually nothing of the decedent except one of his feet. It is difficult to find in Exhibits K and L any indication of the decedent until one scrutinizes the photographs carefully; he then finds in each an outline of a foot.

When Exhibits D, L, K and J were offered in evidence, the trial judge reserved his ruling. Presently defendants' counsel, while cross-examining one of the plaintiff's witnesses, asked a series of questions as to the position of Byerly's body in the wreckage, and thereupon the trial judge ruled:

> "I think at this time, since counsel has cross-examined the witness as to the position of the body and the damage to the truck, that I will overrule the objection to Exhibits L, J, K and D and they will be received."

We believe that the four photographs were capable of serving to a substantial extent material issues in the case. By reverting to the objection which was made when the photos were presented, it will be seen that counsel went no further than to state that "they might be prejudicial."

Wigmore on Evidence, 3d Ed, § 1158, in stating the rule which governs situations of the kind now before us, says:

"* * * no doubt the trial Court has a discretion, which it should firmly exercise, to prevent the abuse of such a mode of proof. But it seems too rigorous to forbid a party to prove his case by the clearest evidence; and a jury which through violent prejudice would not be restrained by the Court's instructions would probably give way to its prejudice even without this evidence. The Courts impose no prohibition, except so far as the discretion of the trial Court may prevent abuses."

*Thibodeau v. Connecticut Co.*, 139 Conn 9, 89 A2d 225, was concerned with the admissibility of a photograph which showed the body of a 10-year-old boy lying upon the pavement after the defendants' bus had run over and killed him. Referring to the photograph, the court said:

"* * * It is a gruesome picture and the defendants objected to its admission on the ground that it would prejudice the jury. It, however, portrays several facts that were relevant in the case."

The court, in sustaining the photograph's admissibility, ruled:

"* * * When evidence such as a photograph is offered the tendency of which may be to prejudice the jury, its admissibility lies in the sound discretion of the court. It may be admitted if its value as evidence out weighs its possible prejudicial effect. Cavallaro v. Welch, 138 Conn. 331, 334, 84 A.2d 279; Baxter v. Chicago & Northwestern Ry. Co., 104 Wis. 307, 325, 80 N.W. 644; Cooper v. St. Paul City Ry. Co., 54 Minn 379, 383, 56 N.W. 42; 3 Wigmore, Evidence (3d Ed.), p. 185, § 792(2); 4 id. p. 259; 20 Am. Jur. 609, § 729. In the present case, we cannot say that the trial court abused its discretion in admitting the photograph."

We know of no reason for believing that the trial court abused its discretion when it made the challenged ruling. This assignment of error lacks merit.

The second and third assignments of error are based upon motions made by the defendants, first for an order of involuntary nonsuit, and next for an order for a directed verdict. The two assignments of error are argued together in appellants' brief and present the same contentions.

■ When a defendant does not rest after moving for an involuntary nonsuit, but introduces evidence in his own behalf, the evidence thus presented may be considered in sustaining a recovery by the plaintiff. *Cornely v. Campbell,* 95 Or 345, 186 P 563. In proceeding with a narrative of the evidence, we are at liberty, therefore, to mention evidence introduced after the motion for a nonsuit was made as well as that previously received. The question presented by both assignments of error is whether the entire record contains sufficient evidence to support the charge of negligence. Specifically, the question is: (1) Could the jury find from the evidence as a whole that the collision occurred in Byerly's proper lane; (2) what are the consequences if that issue is resolved in favor of the plaintiff.

We have mentioned the fact that the collision which took Byerly's life occurred upon a stretch of roadway which, at the place of the fatality, was straight for a distance of 900 feet. Its course was east and west. Byerly was proceeding west and the defendants' truck east. East of the place of the collision, about 350 feet, the roadway curves gently to the north; that is, it takes a northeasterly course.

The photographs show that the collision occurred on the north half (Byerly's) of the roadway. However,

the defendants contend that as Byerly rounded the gentle curve which we just mentioned, that is, as he was driving southwesterly upon the curving segment and entering the straight area, he got onto the south half of the roadway (defendants'). Wooge testified that as the two trucks approached each other he observed that Byerly was on the south half of the roadway. He swore that he thereupon sounded his horn and blinked his lights in an effort to warn Byerly. He also testified that when Byerly failed to respond to the warnings and continued to drive on the south half he (Wooge) applied his brakes and, when he observed that disaster was impending, turned sharply to the left. The defendants offered that explanation of the presence of their truck on the north half of the site of the collision. According to them, Byerly turned to the north half at the same instant that Wooge made his turn, and claim that in that manner the collision took place.

A witness for the plaintiff, who was acquainted with Byerly, was standing alongside his car at the edge of the road 500 feet east of the site of the fatality when Byerly drove by. The witness swore that he and Byerly waved to each other and that Byerly was on his right half of the pavement.

From the undisputed evidence, the jury was warranted in finding that the two trucks came to rest in a position which resembled the letter V, with the front of both cabs on the north shoulder of the road, forming the apex of the V. The defendants' truck, when it came to rest, pointed northeasterly and Byerly's northwesterly. The front of each truck was against an embankment which parellels the north shoulder of the roadway. Wooge testified that his truck moved only one or two feet after the impact and that practically

all of his truck was in the north half of the roadway when the collision occurred. According to him, only a part of Byerly's cab was in the north half of the highway. He indicated that the right corner of Byerly's cab struck the right front of the defendants' truck.

A police officer by the name of Gordon, who arrived at the scene of the accident before the trucks were separated, testified that he noticed a skid mark which led to the rear of the defendants' vehicle. The mark was made by only one wheel (dual tires). It extended for a distance of 91 feet, six inches, in the south lane and then continued for 20 feet, eight inches, into the north lane where it ended at the rear of the defendants' truck. The witness was unable to determine whether the defendants' left or right rear dual tire had made the mark. It is possible to infer from the evidence that it was made by the defendants' left rear tire. If that was the tire which made the mark, the defendants' truck was upon its right half of the pavement until a moment or two before the crash occurred. But, if the mark was made by the defendants' right rear tire, and there was evidence which so indicated, then the defendants' truck was straddling the yellow line which designated the center of the pavement, and had been so doing for a substantial period before the impact took place. A dark blurred spot on the pavement near the rear of the defendants' truck might indicate that the force of the impact shifted, or jumped, the defendants' truck slightly westerly and thus accounted for the fact that the mark, as traced by some of the witnesses, did not terminate directly into either set of the defendants' truck tires.

The above will suffice for the present as a statement of the evidence germane to the assignments of error under consideration.

From the foregoing, the jury could have concluded that the collision occurred in the north (Byerly's) lane; in fact, the situation offered no alternative. We now face the crucial question of the case: Assuming that the jury found that the defendants' truck was operating in the north (Byerly's) lane, what are the consequences which must ensue from the finding.

In order to answer the question just mentioned, we must consider ORS 483.302 and 483.306. The former provides:

"(1) Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive on the right half of the highway except when:

"(a) The right half is out of repair and for that reason is impassable; or

"(b) Overtaking and passing another vehicle in accordance with ORS 483.308.

"(2) * * *."

ORS 483.306 reads:

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible."

■ The requirement of keeping to the right half is not absolute under all circumstances and does not contemplate undeviating compliance except when drivers meet and pass vehicles coming from the opposite direction. *Austin v. Portland Traction Co.*, 181 Or 470, 182 P2d 412. Furthermore, the statute is not considered violated in instances when the driver, acting as a reasonably prudent person, turns to the left to avoid a collision with an approaching vehicle traveling in its wrong lane. *La Vigne v. Portland Traction Co.*, 179

Or 221, 170 P2d 709. Violation of the statute is negligence per se. *Wilson v. Bittner,* 129 Or 122, 276 P 268.

■ The fact that the collision occurred in Byerly's lane gave rise to an inference that the defendants violated the foregoing sections of our traffic laws. Such an inference is sufficient to constitute a prima facie case of negligence. *Wilson v. Bittner,* supra. In *Natwick v. Moyer,* 177 Or 486, 163 P2d 936, this court held that the trial judge did not err in denying the defendant's motion for a directed verdict when it was not unreasonable for the jury to have concluded that (1) the collision occurred at the point where debris from the colliding vehicles was found in the plaintiff's lane, and (2) the collision was caused by the negligence of the defendant in driving on the wrong side of the road. It was so held notwithstanding that the defendant and three of his four companions, who were the only living eye witnesses to the accident, swore to the contrary. However, the court reversed the judgment for the plaintiff on other grounds. It is important to note that in that case a finding that the collision occurred in the plaintiff's lane permitted an inference that the defendant was negligent and that such negligence was the cause of the collision. That holding authorizes an inference that violation of the traffic regulations previously quoted was negligence per se. The course taken in the Natwick case shows that such inferences are strong enough to create a prima facie case of negligence.

In Idaho, under a statute identical to ours in so far as the meeting of vehicles is concerned, the rule is employed that when a driver collides with another to his left of the center of the highway, he is prima facie guilty of negligence. *Stuart v. McVey,* 59 Idaho 780,

87 P2d 446. In *Hamilton v. Carpenter,* 49 Idaho 629, 290 P 724, the court declared:

"* * * when one collides with another to his left of the center of the highway he is prima facie guilty of negligence, which is prima facie deemed a proximate cause of any damage resulting."

In *Turcotte v. DeWitt,* 330 Mass 160, 124 NE2d 241, the court said:

"* * * On the evidence most favorable to the plaintiff it could have been found that the van collided with the deceased's automobile on the westerly lane, which would be the deceased's right hand lane. If the jury believed that the accident occurred at this point in the road they could have found negligence on the part of the operator of the van. The question was one of fact for the jury to decide."

*Auto Transport, Inc., et al. v. Potter,* 197 F2d 907, is to the same effect.

We believe that our interpretation of the effect of the above traffic regulations as stated in the preceding paragraphs is authorized.

■ After the defendant has produced rebutting testimony and rested his case it is, ordinarily, for the jury, in deciding whether the plaintiff has carried his burden of persuasion, to determine whether the prima facie case which the plaintiff established has been weakened or destroyed. It is, of course, manifest that the burden of persuasion on the issue of defendants' negligence rested throughout the case with the plaintiff. However, when the court was asked to direct a verdict for the defendants, it was required to determine whether the evidence produced by the defendants negated that which established the plaintiff's prima facie case so conclusively that no reasonable man could any

longer be justified in engaging in the inferences which established the plaintiff's case.

As we have indicated, Wooge, one of the defendants and the driver of their truck, was the only eye witness. He testified that Byerly was in the wrong lane and that he (Wooge) had turned in the left lane in order to avoid collision. The skid marks made by the rear dual tires of the defendants' truck which we have described are consistent with Wooge's testimony, but they are also consistent with the interpretation which the plaintiff places upon them. Two witnesses testified that as they approached the scene of the accident from the east they observed tire marks which began on the north side of the road, crossed to the south side and then turned sharply back to the north side where they led to the rear of Byerly's truck. Two other witnesses, however, swore that, although they had looked, they had found no tire marks made by Byerly's truck. As we have stated, one witness testified that he saw Byerly on the latter's right-hand side of the road 500 feet east of the point of impact.

■ We cannot say that the evidence presented by the defendants was so conclusive as to take from the jury a question which is normally theirs. We conclude, accordingly, that the trial judge committed no error when he denied the defendants' motions for an involuntary nonsuit and a directed verdict.

The fourth assignment of error has been withdrawn.

■ The fifth assignment of error is predicated upon a charge that the trial judge erred when he failed to give the jury the following requested instruction:

"You are instructed that the defendant, Wooge, had a right to presume that Gordon Byerly would drive his truck on his own side of the highway and

had a further right to presume that Gordon Byerly, although driving on the wrong side of the highway, would turn his truck back to the right side of the highway in time enough to prevent the two vehicles from colliding."

The requested instruction commented upon the evidence inasmuch as it indicated that Byerly was on the wrong side of the highway as the two vehicles approached each other. It is also guilty of the same error in that it does not advise the jury that Wooge was allowed to presume that Byerly would turn into the proper lane only up to the moment when a reasonably prudent man, under similar circumstances, would have engaged in such an assumption. No error was committed when the court refused to give this instruction.

The above disposes of all assignments of error. The judgment of the circuit court is affirmed.